## Della Bickling, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued February 6, 1975, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Dianne Upson,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, March 11, 1975:

This is an appeal from an order of the Unemployment Compensation Board of Review (Board), dated April 25, 1974, which affirmed a referee's denial of benefits of Della Bickling (Bickling).

Bickling was employed by Clifford's Nursing Home (Clifford) from May 1, 1966, until January 21, 1974, the date of her discharge. In the course of her employment with Clifford, Bickling served as a "housemother" to several retarded girls who lived with her in a cottage at the Clifford establishment. The record reveals that Bickling was generally responsible for maintaining the living quarters, personal hygiene, and overall care of the

girls in her charge. There were no published rules to provide Bickling with direction as to her duties, and, apparently, any specific instructions she received were in the form of *ad hoc* oral communications.

The referee and the Board found as facts that Bickling had (1) refused to give the girls medicines; (2) failed to properly set the thermostat in the cottage; (3) failed to keep the doors and windows unlocked; and (4) failed to notify her superiors when the cottage's heating unit malfunctioned. Both parties agree that the first three items listed above occurred some months prior to Bickling's discharge, and that the circumstances surrounding the heating unit's failure were the immediate cause of her discharge.

Benefits were denied on the basis of section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e), which provides, in relevant part, that an employee shall be ineligible for compensation for any week:

"(e) in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . ."

The burden of proving willful misconduct is on the employer. *MacFarlane v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 550, 554, 317 A. 2d 324, 326 (1974) and *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 98, 309 A. 2d 165, 169 (1973). Whether the facts, as found below, constitute willful misconduct is a question of law. *Longacre, Inc. v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 176, 179, 316 A. 2d 110, 111 (1974). Our power to review for errors of law is clear, as is our duty to determine whether all necessary findings are supported by substantial evidence. *Stalc v.*

*Commonwealth of Pennsylvania, Unemployment Compensation Board of Review*, 13 Pa. Commonwealth Ct. 131, 134, 318 A. 2d 398, 400 (1974).

We have interpreted section 402(e) of the law as requiring (1) the wanton and willful disregard of the employer's interest; (2) the deliberate violation of rules; (3) the disregard of standards of behavior which an employer can rightfully expect from his employe; or, (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employe's duties and obligations. *Kentucky Fried Chicken, supra.* This definition indicates that before the actions of an employe can constitute willful misconduct, the employe must display a serious disregard of his responsibilities to his employer, in a manner that is in some real sense deterimental to his employer's interests. The question is primarily a matter of degree, and the inquiry must be framed in terms of whether the employe's acts rise to the level of willful misconduct. *Loder v. Unemployment Compensation Board of Review*, 6 Pa. Commonwealth Ct. 484, 296 A. 2d 297 (1972).

After a careful review of the record in this case, we cannot agree with the Board that the record supports a conclusion that Bickling was guilty of willful misconduct. At first glance, the four items found by the Board to constitute willful misconduct appear to be potentially serious matters. A close examination of the record on each of these points, however, reveals either a lack of the requisite substantial evidence or what amounts to a reasonable deviation by Bickling from the instructions of her employer.

With the regard to the refusal to give the girls medication, the record shows that the *only* evidence against Bickling was offered by Clifford's personnel director, who, the record reveals, was testifying on the basis of what she "understood" to be the procedure for adminis-

tering medication. This scant evidence, without any basis in the firsthand knowledge of the witness, is not sufficient to constitute substantial evidence in support of the Board's finding. It should also be noted that Bickling testified that she had given medication for several years, but stopped doing so with the permission of her supervisor. This testimony was uncontroverted.

As to the thermostat setting, Bickling was apparently instructed to maintain a temperature of 75 degrees in the cottage. She turned the thermostat down at night, because, as she testified, the room where the girls were sleeping was uncomfortably warm. She noted that the girls were clad in flannel pajamas and nightgowns, and were provided with warm blankets. This explanation was not challeged by Clifford, and the exercise of such judgment on Bickling's part, while perhaps in contravention of her employer's instructions, simply does not rise to the level of willful misconduct.

Bickling justified her failure to keep the cottage doors and windows unlocked by relating an incident which occurred one afternoon as she was finishing her bath. One of the other female employes of Clifford and a man entered the cottage unannounced, and Bickling indicated in her testimony that there was some embarrassment connected with this type of intrusion.

The source of the requirement that doors be unlocked was apparently a "state inspector" who expressed concern over the possibility of fire. According to Bickling, the "inspector" told her to keep the doors unlocked "unless you have a good reason why they shouldn't." Bickling's explanation of the incident which led her to believe she had a "good reason" was unchallenged, and, while her practice of keeping the door locked during the afternoon (when she was in the cottage alone) might have been in contravention of her employer's instructions, once again we cannot agree that her actions amounted to willful misconduct.

Finally, we must hold that the finding of the Board regarding failure to report the heating unit malfunction is not supported by substantial competent evidence. According to Bickling, the malfunction was promptly reported. The *only* contrary evidence offered by Clifford was based upon an account of what another employe allegedly told Bickling's supervisor, this account being testified to by yet a third employe of Clifford. As we have previously held, a finding based *solely* on hearsay cannot stand. *Lipshutz v. Unemployment Compensation Board of Review*, 8 Pa. Commonwealth Ct. 257, 303 A. 2d 231 (1973). We recognize that this is a very close case, and, while we do not condone such actions by an employe, these incidents, even considered in the aggregate, simply do not seem to be of the character of willful misconduct as that term was defined in *Kentucky Fried Chicken, supra.* Our holding here is, of course, limited to the peculiar facts of this case.

In light of the above opinion, we therefore

### ORDER

AND NOW, this 11th day of March, 1975, it is hereby ordered that the order of the Unemployment Compensation Board of Review, dated April 25, 1974, denying unemployment compensation benefits to Della Bickling, is reversed.