Alexander W. **ROBERTS,** Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 27, 2009.

Decided June 8, 2009.

---

Alexander W. Roberts, petitioner, pro se.

Shawn J. Jayman, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Alexander Roberts (Claimant), *pro se,* petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying his claim for unemployment compensation benefits for reason of Claimant's willful misconduct. In doing so, the Board reversed the decision of the Referee. Concluding that the Board erred in holding that Claimant did not have good cause to leave his patient unattended for five minutes, we reverse.

Woods Services (Employer) is a private organization that provides educational, residential and vocational services to children and adults with special needs. As a client care worker in Employer's residential facility, Claimant was directly responsible for the care of a "one-to-one" client who was subject to "close reach supervision . . . at all times due to behavioral concerns." Board's Decision and Order, Finding of

Fact No. 2 (F.F.___). Employer's rule required close supervision of one-to-one clients. However, these clients were alone and unattended between the hours of 11:00 p.m. and 7:00 a.m. except for checks every thirty minutes.

On May 9, 2008, Claimant's shift began at 7:00 a.m. When he arrived, Claimant's one-to-one client (Client) expressed the wish to remain in bed and eat breakfast later since he would not be going to school that day. At 8:00 a.m., after checking to make sure that Client's bedrail was properly in place, Claimant went to the kitchen to retrieve Client's breakfast. Employer's residential manager, Shanna Garland, discovered that Client was unattended. After waiting approximately five minutes, Garland learned that Claimant was in the kitchen. Garland suspended Claimant and, several days later, terminated his employment for leaving Client unattended.

Claimant applied for unemployment compensation benefits. In the Employer Questionnaire submitted to the Scranton UC Service Center, Employer stated that Claimant was suspended and terminated for preparing food for himself and leaving Client alone and unsupervised while he did so. The Scranton UC Service Center determined that he was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] Claimant appealed, *pro se,* and a hearing was held before the Referee on July 8, 2008.

At the hearing, Garland testified that she went to Client's room at approximately 8:00 a.m. when it was discovered that Client was unattended. She stated that she waited for Claimant for five minutes. When a floor supervisor informed Garland

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). It provides, in relevant part, that "[a]n employe shall be ineligible for compen-

sation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e).

that Claimant was in the kitchen, Garland directed the supervisor to remain with Client while she went to the kitchen. There, Garland found Claimant preparing food at the grill. She acknowledged, however, that Claimant was not preparing food for himself, as she previously believed, but for Client. Garland demanded an explanation from Claimant, suggesting that he should have requested one of the 19 employees in the building to supervise Client while he went to the kitchen. Garland testified that Claimant knew that Client was not to be left unsupervised while he was awake. Finally, Garland explained that Employer has pantry staff that is responsible for cooking and preparing food and that Claimant should not have been in the kitchen for any reason.

Claimant testified that on the morning of May 9, 2008, Client stated that he had suffered a skin breakdown from sitting in his wheelchair and would not be going to school. Client told him he wanted to eat breakfast later. At 8:00 a.m., Claimant explained that he went to the kitchen to secure breakfast for Client before all of the food was put away. He had covered Client's breakfast with aluminum foil and was "put[ting] it on top of the grill" when Garland found him in the kitchen. Notes of Testimony, 7/8/08, at 7 (N.T. ____).

Claimant testified that the presence of 19 other employees in the building did not matter. None were in his area when he went to get Client's breakfast, and there was no telephone available to call for help. Claimant further explained that the other employees would not have been able to leave their clients, who were preparing for school, in order to supervise Client, who was lying in bed watching television.

Claimant stated that he believed he was permitted to take care of Client's breakfast. Before he did so, Claimant safely secured Client in his bed with the railing in place; Client was not ambulatory. Claimant also testified that Employer routinely directed him and other client care workers to leave their clients unattended while they washed laundry, changed bed linens and did other tasks. Claimant stated that because "most of the time there's no pantry staff" and "there's nobody to fix food for the client," the client care workers routinely retrieve or put away meals for clients. N.T., 7/8/08, at 9. He explained that he and other client care workers had done this many times before and that Employer had never reprimanded them for doing so. Finally, Claimant testified that Client is often awake and unattended when he arrives at 7:00 a.m.

Upon cross-examination, Claimant admitted that there was pantry staff in the kitchen that morning. However, he explained that because there was no phone in the area where he worked, he was not able to contact the kitchen staff. When asked if a member of management had ever told him that it was permissible for Client to be out of close reach supervision, Claimant stated that Garland had previously required him to plant flowers around the building while Client remained unsupervised in his wheelchair "in the door." N.T., 7/8/08, at 10.

The Referee found that Claimant's conduct did not rise to the level of willful misconduct and concluded, therefore, that Claimant was eligible for benefits. Employer appealed, and the Board reversed. The Board found that Claimant had not shown good cause for leaving Client unattended. The Board found it significant that Claimant did not tell his supervisor that he was leaving Client unattended and had not asked a fellow employee to cover for him while he went into the kitchen. The Board found it irrelevant that Client was often awake and unattended when Claimant arrived at 7:00 a.m. because Em-

ployer permitted Client to be unattended between 11:00 p.m. to 7:00 a.m., except for checks every 30 minutes. Board's Decision and Order at 2–3. Claimant now petitions this Court to review the Board's order.

◼ On appeal,[2] Claimant challenges the Board's findings on several bases. The crux of Claimant's argument is that he showed good cause for violating Employer's rule. We agree.

◼ Whether a claimant's conduct constituted willful misconduct is a question of law subject to this Court's review. *Glatfelter Barber Shop v. Unemployment Compensation Board of Review*, 957 A.2d 786, 792 (Pa.Cmwlth.2008). Further, the employer bears the burden of establishing that the claimant was discharged for willful misconduct on the job. *Id.* Although the Law does not define willful misconduct, it has been construed as a violation of the employer's rules or a disregard of the standards of behavior an employer has the right to expect of an employee. *ATM Corp. of America v. Unemployment Compensation Board of Review*, 892 A.2d 859, 865 (Pa.Cmwlth.2006).

◼ Where the claimant is discharged for a work rule violation, the employer has the burden to show that the claimant was aware that the work rule existed and that the claimant violated the rule. *Bishop Carroll High School v. Unemployment Compensation Board of Review*, 125 Pa. Cmwlth. 302, 557 A.2d 1141, 1143 (1989). Once the employer establishes those elements, the burden shifts to the claimant to show that he had good cause to violate the

rule or that the rule was unreasonable. *Id.*

Here, Claimant acknowledged that he was to give close supervision to Client and that he left Client unsupervised for a brief period of time while he went to get Client's breakfast. These admissions establish a violation of the work rule. Accordingly, the burden shifted to Claimant to show that he had good cause to violate the rule or that the rule was unreasonable.

◼ Good cause is established "where the action of the employee is justified or reasonable under the circumstances." *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 87, 351 A.2d 631, 634 (1976). Precedent teaches that taking actions to advance a patient's health and safety will constitute good cause to violate an employer's work rule.

In *Cundiff v. Unemployment Compensation Board of Review*, 88 Pa.Cmwlth. 272, 489 A.2d 948 (1985), the claimant, a nurse's aide, was required to begin feeding patients at 8:00 a.m. However, one morning at 8:00 a.m., the claimant did not begin this duty because she was bathing a patient who had suffered an incident of incontinence. This Court found that the claimant's refusal to leave an elderly, invalid patient in the bathtub so that she could begin feeding other patients was reasonable, noting that it would be unreasonable to jeopardize a patient's safety in order to comply with a work rule.

In *Bickling v. Unemployment Compensation Board of Review*, 17 Pa.Cmwlth. 619, 333 A.2d 519 (1975), the claimant, a housemother in a cottage housing mentally retarded girls, did not keep the thermostat

---

**2.** This Court's scope of review in an unemployment compensation case is limited to determining whether constitutional rights were violated, whether an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Blue v. Unemployment Compensation Board of Review*, 150 Pa.Cmwlth. 542, 616 A.2d 84, 86 n. 4 (1992).

at 75 degrees at all times, as directed. The claimant reduced the temperature at night because the girls, clad in flannel nightclothes and covered by warm blankets, were uncomfortably warm. This Court found that the claimant had acted in the best interests of the girls, and therefore, although her conduct was "in contravention of her employer's instructions," it "simply [did] not rise to the level of willful misconduct." *Id.* at 522.

In this case, the need to retrieve Client's breakfast provided Claimant good cause for his violation of Employer's rule. Claimant had the responsibility to make sure Client was properly fed, and he testified that because pantry staff was often not available, client care workers routinely retrieve food from the kitchen for their clients and later put it away. Claimant argues that a "[f]ailure on my part to get and reserve my client food from the kitchen could keep him hungry until lunch." Claimant's Brief at 7. Claimant acted in the best interests of both Client and Employer by going to the kitchen to secure Client's breakfast leaving Client, who was secured in his bed with his bedrail in place, for a brief time.

The Board rejected Claimant's good cause defense for the reason that he could have requested a fellow employee to supervise Client in his absence. The Board specifically found as fact that

[n]ineteen (19) other employees were in the building at the time [Claimant] was found in the kitchen.

Board's Decision and Order, F.F. No. 5. However, the uncontradicted evidence was that there was no way to contact these other persons who were, in any case, busy with their own one-to-one clients. In addition, it had never been necessary under Employer's application of the close supervision rule to find a replacement for a short absence from the client's room.[3]

■ The Board stated, generally, that it found Employer's witnesses credible and resolved all conflicts in the testimony in favor of Employer. The Board's credibility determinations are binding on this Court. *Stringent v. Unemployment Compensation Board of Review,* 703 A.2d 1084, 1087 (Pa.Cmwlth.1997). However, Employer's witnesses did not contradict Claimant's testimony that he and other client care workers were required by Employer to perform a variety of chores while leaving their clients alone briefly; that Employer had never reprimanded client care workers for brief absences needed to help their clients; and that there was no way for Claimant to contact pantry staff or other employees who were, in any case, busy with their own one-to-one clients.

Given Claimant's uncontradicted testimony that Employer permitted and even required "one-to-one" clients to be left alone briefly, notwithstanding its close supervision rule, there is a question about

3. Claimant contends that the client care workers regularly left their clients briefly because it was a practical impossibility to perform the chores that Employers required them to do while also remaining within "close reach" of the clients. In arguing impossibility, Claimant challenges Employer's rule as inherently unreasonable. Claimant notes that although Garland testified that Client was never to be left unsupervised when awake, Client was often awake and alone when Claimant arrived at 7:00 a.m. and could have

been awake and unattended for 30 minutes. To Claimant, there is no rhyme or reason to Employer's "rule" of allowing Client to lie in bed unattended and awake from 11:00 p.m. to 7:00 a.m. but constantly supervised while lying awake in bed after 7:00 a.m. Under Employer's rule, Client can be completely unsupervised from 6:30 a.m. to 7:00 a.m. but after 7:00 a.m. cannot be left alone for five minutes. Claimant makes a good argument, but we need not decide this case on whether Employer's rule was unreasonable.

whether Claimant even violated Employer's rule. Assuming Employer's rule was inflexible, however, Claimant showed good cause to violate it. Claimant was attending to a basic need of Client, having secured Client in his bed, while he left Client for approximately five minutes. The evidence established good cause for Claimant's violation of the work rule and, thus, the Board erred in finding that Claimant's actions constituted willful misconduct.

For the foregoing reasons, we reverse the Board's order denying Claimant benefits.

### ORDER

AND NOW, this 8th day of June, 2009, the order of the Unemployment Compensation Board of Review in the above-captioned matter, dated September 5, 2008, is hereby REVERSED.

### CONCURRING OPINION BY Senior Judge FRIEDMAN.

I concur in the result reached by the majority. I write separately simply to provide a different analysis of the matter before this court.

Alexander W. Roberts (Claimant) violated a work rule requiring him to provide "close reach supervision" as of 7:00 a.m. each day for a "one-to-one client" with behavioral issues when, on May 9, 2008, at 8:00 a.m., Claimant left the client unattended to go to the kitchen. Woods Services (Employer) discharged Claimant as a result of the incident, and Claimant applied for unemployment compensation (UC) benefits. His application was denied pursuant to section 402(e) of the Unemployment Compensation Law (Law),[1] and Claimant filed an appeal.

After a hearing on the matter, the referee found that Claimant believed it was permissible for him to go to the kitchen at 8:00 a.m. to get breakfast for the client because the client was in bed and because the client did not need special supervision prior to 7:00 a.m. (Referee's Findings of Fact, Nos. 4–5.) Based on this finding of fact, the referee concluded that Claimant's violation of the work rule was reasonable and, thus, did not rise to the level of willful misconduct. Employer filed an appeal with the Board, which reversed. Unlike the referee, the Board concluded that the work rule violation was not justified.[2] Claimant now petitions this court for review.

An employer bears the initial burden of proving that a claimant violated a work rule. *Department of Corrections v. Unemployment Compensation Board of Review*, 943 A.2d 1011 (Pa.Cmwlth.2008). Once the employer meets its burden, a claimant may then prove that he had good cause for his actions. *Id.* Good cause is established where the action of the employee is justifiable or reasonable under the circumstances. *Id.*

The Board found that the client in this case required special supervision because of "behavioral concerns." (Board's Findings of Fact, No. 2.) The referee asked Claimant about the client's behavioral is-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Under section 402(e) of the Law, an employee is ineligible for UC benefits for any week in which the employee's unemployment is due to his or her discharge from work for willful misconduct connected with the work.

2. The Board stated that it "discredited" Claimant's testimony that his violation of the work rule was justified. (Board op. at 2–3.) However, the question as to whether Claimant's violation of the work rule was justified is not a credibility determination; it is a question of law. *Department of Corrections v. Unemployment Compensation Board of Review*, 943 A.2d 1011 (Pa.Cmwlth.2008).

sues, and Claimant explained that: (1) the client needed special supervision because, **when the client was in a wheelchair,** the client was able to move around and was aggressive towards others; and (2) the client did not need such supervision before Claimant arrived for work at 7:00 a.m. because the client was in bed, not in a wheelchair. (N.T. at 8.) Inasmuch as the client required special supervision when he was in a wheelchair and did not require special supervision when he was in bed, Claimant reasonably believed he could go to the kitchen at 8:00 a.m., while the client was in bed, to get breakfast for the client.[3]

Accordingly, like the majority, I would reverse.

3. I also submit that, to the extent the work rule ignores the reasons for requiring special supervision of a client, focusing solely on hours of the day rather than the client's circumstances, the work rule is unreasonable.