**Tammy ARNDT, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2012.

Decided March 15, 2013.

Glen S. Downey, Pittsburgh, for petitioner.

Maribeth Wilt–Seibert, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Tammy Arndt (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying her application for benefits. In doing so, the Board reversed the Referee's award of benefits. The Board held that Claimant threatened her supervisor on a picket line, which constituted willful misconduct and rendered her ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] Claimant contends that the Board erred because, at most, she made offensive comments to her supervisor, which was not willful misconduct. Claimant also contends that there was no evidence in the record to support the Board's factual finding that Claimant set her dog on the supervisor. We agree and will reverse.

Claimant worked as a clerk for Verizon Communications (Employer) from July 2007 to August 2011. Claimant's union, the Communications Workers of America, initiated a strike on August 7, 2011, that ended on August 22, 2011. Claimant was discharged during the strike and, thus, did not return to work. Claimant filed for unemployment benefits, but they were denied under authority of Section 402(e) of the Law. Claimant appealed, and a hearing was held before the Referee.

At the hearing, Claimant appeared, *pro se*, and testified about the events that led to her discharge. On August 10, 2011, Claimant was participating in a picket line with several other striking employees at Employer's facility. Claimant and her husband brought their basset hound, and several others also brought their dogs. One striking employee, Laura Chanosky, brought her pit bull.

Claimant testified that when her supervisor, Lourdes Torres, left the building to walk to her car, Claimant said "press 1 for English, 2 for Spanish" to Torres as a joke because that is the message given to all callers and she thought Torres would be answering the phones during the strike. Certified Record, Item No. 10; Notes of Testimony at 46 (N.T.——). Also as a joke, Claimant called Torres a "lard ass bitch." N.T. 46. Claimant's union representative had informed her that picketers could say whatever they wanted but could not do physical damage. Later in the hearing, upon the Referee's questioning, Claimant denied making an ethnic slur to or about Torres. Claimant noted that her own children are of Puerto Rican descent.

Claimant explained that Employer's security department contacted her for a meeting to investigate the August 10 picket line incident between Torres, Claimant and the pit bull. Claimant cancelled the interview on the advice of her union representative. The meeting was later rescheduled, but Claimant did not receive any notice of the second investigatory meeting. Claimant also testified that she never received or read Employer's Code of Conduct, and never signed an acknowledgement to that effect.

Claimant testified about her acrimonious history with Torres. The two had conflicts over Claimant's leave and what constituted appropriate documentation for a work absence. A few days before the strike, Torres refused to accept Claimant's documentation for leave necessitated by Claimant's

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). It provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e).

court appearance relating to her adoption of a child. Claimant testified that Torres screamed at her and told Claimant she was walking a thin line. Claimant reported this incident to Employer's ethics department.

David Arndt, Claimant's husband, testified about the strike incident. He stated that he heard Claimant say "press 1 for English, press 2 for Spanish." N.T. 43. He did not hear her make any other comments, and he emphasized that Claimant's bassett hound did not come close to or intimidate Torres in any way. He saw Chanosky's pit bull near Torres, but could not report what happened in that regard. His interaction with Torres was limited to walking past Torres' car as she was walking towards it.

Lourdes Torres, Claimant's supervisor, testified. She explained that her job duties include, *inter alia*, managing employee attendance and timeliness; Family Medical Leave absences; and insurance claims. Torres explained that Claimant had previously violated Employer's Code of Conduct by leaving an investigatory meeting, without permission, which prompted Torres to issue a written warning to Claimant for insubordination.

Torres described the picket line incident on August 10. Torres explained that her fear of dogs was well known to others, including Claimant and the other striking employees on the picket line. Torres left the building with approximately 25 other supervisors; they encountered the picketers standing near the building's entrance with their dogs. Claimant and another employee, Stephanie Stady, kept their dogs away from Torres. However, as Torres walked to her car, Chanosky approached Torres with her pit bull, allowing it to touch Torres' leg. Torres stated that she heard Claimant say "attack, have a piece of Puerto Rican [meat] tonight." N.T. 12.[2] Torres also testified that Claimant's husband spit on the ground as she walked by him. Torres reported the incident to Employer because she believed Claimant's comment to be intimidating, racist and inappropriate, in violation of several sections of Employer's Code of Conduct: Section 1.2 (discrimination and harassment in the workplace), Section 1.3 (workplace violence), and Section 1.9 (criminal misconduct off the job). Employer's Code of Conduct was admitted into evidence.

Torres testified about Claimant's absence for a court appearance. Claimant presented Torres with a document to show that she had been absent for the court date, but Torres did not accept the document because it had been printed off the internet. When Claimant complained, Torres told her that she was "walking a fine line" and directed Claimant to return to her desk. N.T. 22. Claimant then asked whether Torres was threatening her. Torres left to talk to a manager, and when she returned, Claimant had returned to her own desk.

Herberto Feliciano, Employer's security investigator, testified about the August 10 incident. Feliciano contacted Claimant for the interview and informed her that she was required to attend. Claimant called Feliciano the next day, stating that she was cancelling the interview on the advice of her union representative. Feliciano rescheduled the interview with the union

---

**2.** Claimant, who was *pro se* at the Referee hearing, attempted to have a copy of a summary of Employer's investigation entered into the record. The summary noted that a witness to the August 10 incident did not hear Claimant use the work "attack." He heard Claimant say "these dogs prefer Puerto Rican meat." Claimant's Exhibit 1. The Referee granted the hearsay objection of Employer, who was represented by counsel.

representative, but Claimant did not appear at the scheduled time and place for the interview. Feliciano testified that Claimant's failure to attend violated Employer's Code of Conduct.

The Referee granted benefits. He found that Employer discharged Claimant for failing to appear at the investigatory hearing and for her actions on the picket line. Because Claimant had not been directly informed of the rescheduled investigatory meeting, the Referee found that she had good cause for not attending. The Referee also found that while Claimant's statements on the picket line were unprofessional, they did not rise to the level of willful misconduct.[3] Employer appealed the Referee's decision.

The Board reversed the Referee. The Board made its own findings of fact, including two that are critical to this appeal:

6. While on the picket line, the claimant threatened her supervisor.

7. The claimant let *her* pit bull touch her supervisor's leg and told *her* pit bull to have a piece of Puerto Rican meat in reference to the supervisor.

Board's Findings of Fact Nos. 6–7 (emphasis added). The Board expressed skepticism that Claimant would not know that Employer's workplace violence policy applied to conduct on a picket line. The Board held that, in any case, a threat to a supervisor will justify a discharge even where there is no applicable work rule. The Board agreed that Claimant could not be denied benefits on the basis that she did not attend the investigatory meeting of which she did not have notice. However, the Board held that Claimant's threat to Torres with her dog constituted willful misconduct that rendered her ineligible for benefits. Claimant petitioned for this Court's review.

■ On appeal,[4] Claimant presents two issues for our review.[5] First, Claimant contends that substantial evidence does not support the Board's finding that Claimant threatened her supervisor by setting her pit bull on Torres. Second, the Board erred in concluding that Claimant's conduct constituted willful misconduct because the Board failed to consider that Claimant's words were spoken during a strike, and as such, her words were protected under the National Labor Relations Act.[6]

■ We begin with a review of the law on willful misconduct. Although not defined in the Law, the courts have established that it means the following:

(1) an act of wanton or willful disregard of the employer's interest;

(2) a deliberate violation of the employer's rules;

(3) a disregard of standards of behavior which the employer has a right to expect of an employee; [or]

(4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Unemployment Compensation Board of Review*, 708 A.2d 884, 885 n. 3 (Pa.Cmwlth. 1998).

---

3. In making this finding, the Referee referred to all of Claimant's remarks on the picket line. By contrast, the Board based its findings solely on the "Puerto Rican meat" comment.

4. In unemployment compensation cases, this Court's review is limited to whether constitutional rights were violated, errors of law were committed, or whether findings of fact are supported by substantial evidence. *Sheets v.*

5. Claimant's brief raised four issues for review, which we have reduced to two for clarity.

6. 29 U.S.C. §§ 151–169.

*Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 869 (Pa. Cmwlth.1996). It is the employer's burden to establish that a claimant's conduct constituted willful misconduct. *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review*, 814 A.2d 1286, 1288 (Pa.Cmwlth.2003). Whether a claimant's conduct constituted willful misconduct is a question of law subject to this Court's review. *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 (Pa.Cmwlth.2009).

■ In her first issue, Claimant challenges the Board's factual findings that she threatened Torres by allowing her pit bull to touch Torres' leg and telling it to have a piece of Puerto Rican meat. Claimant asserts that these findings are not supported by substantial evidence.[7] We agree.

The record is clear that it was another employee, Laura Chanosky, who brought the pit bull to the picket line. Even Torres testified that it was another employee who approached Torres with her pit bull and allowed it to touch Torres' leg.[8] Torres' testimony does support part of Finding of Fact No. 7, *i.e.,* that Claimant said "have a piece of Puerto Rican meat." The dispositive issue in this appeal, however, is whether Claimant's comment, standing alone, was "threatening conduct" directed to her supervisor.[9] We hold that it was not. The statement was a wise crack or joke that appears not to have been directed to anyone in particular, or perhaps to the dog, as found by the Board. In any event, the Board's finding that Claimant's comment was a directive to *her* dog to attack Torres is simply wrong. Claimant had her own dog leashed and under control, and she did not issue any directives to Chanosky's pit bull.[10] In short, the

7. Substantial evidence is such relevant evidence that a reasonable person will accept as adequate to support a factual finding. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 275, 501 A.2d 1383, 1387 (1985).

8. Torres testified that "[Claimant] and her husband had like a smaller dog. Ms. Laura Chanosky has the pit bull and Stephanie Stady has the other two dogs." N.T. 11. Further, Torres stated that, as she was leaving, "the other smaller dog was around, but I can't pinpoint the exact location because at that point in time I'm terrified of the pit bull and the pit bull is touching my leg." N.T. 12.

9. Torres asserted that the statement "have a piece of Puerto Rican meat" violated three sections of Employer's Code of Conduct: Section 1.2 (workplace discrimination and harassment), 1.3 (workplace violence) and 1.9 (criminal misconduct off the job). Because the Board found that Claimant's threat consisted of actions and words, it did not specifically address Torres' claims that Claimant's comment violated the Code of Conduct. In light of our ultimate legal conclusion that the Board's finding of a threat was not supported by substantial evidence, it is not necessary to

remand for further findings on an alleged work rule violation. Nevertheless, we note that Section One of the Code of Conduct is entitled "Maintaining an Inclusive, Fair and Healthy Work Environment." Simply, it applies to the workplace. Nowhere does the Code of Conduct purport to govern the conduct of employees who are not at work but on strike.

10. The Board argues that a November 4, 2011, determination by the service center denying benefits for the weeks ending August 13, 2011, to August 27, 2011, as a result of being involved in a strike is binding here. It is well-established that a claimant cannot collect benefits as the result of a strike. Section 402(d) of the Law, 43 P.S. § 802(d) ("An employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to a stoppage of work, which *exists because of a labor dispute (other than a* lock-out) at the factory, establishment or other premises at which he is or was last employed...."). This case concerns Claimant's right to benefits for her discharge, which took place before the end of the strike. She may not be eligible for benefits until after the strike's conclusion.

Board's critical Findings of Fact Nos. 6 and 7 are not supported by substantial evidence.

■ Although our inquiry is technically ended, we will address Claimant's argument that her remark about "Puerto Rican meat," while unprofessional, was protected by the National Labor Relations Act and, thus, did not rise to the level of willful misconduct. We agree with Claimant based upon persuasive federal authority.

■ Remarks made during a labor dispute are protected union activity and, thus, picketing union members are generally shielded from employer discipline. The U.S. Supreme Court has held that in balancing the rights of the employer and the employee, as long as the activities engaged in are lawful and the character of the conduct is not indefensible in context, the employees are protected under Section 7 of the National Labor Relations Act. *NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). The language used in labor disputes, like the language used in the political arena, is often vituperative, abusive and inexact. *See Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 58, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). Abusive language of the sort used by Claimant, *i.e.,* epithets, vulgar words or profanity, did not deprive her of the protection of the Act. *NLRB v. W.C. McQuaide, Inc.,* 552 F.2d 519, 528 (3d Cir.1977). Even comments that may seem threatening are protected under the Act because picket line rhetoric is not to be construed literally. *Id.* at 527–28, citing with approval to *NLRB v. Hartmann Luggage Co.,* 453 F.2d 178 (6th Cir.1971) (holding that a striker who told a supervisor that it would be a shame for the strikers to have to kill him was protected because his statement was obviously hyperbole). In the context of a strike,

Claimant argues that her statement to the dog, which was licking Torres' leg, "to have a piece of Puerto Rican meat," was picket line rhetoric that does not constitute a credible threat. We agree.

■ The Board observes that rulings under the National Labor Relations Act are not binding in unemployment compensation cases. *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 550 Pa. 115, 703 A.2d 452 (1997). This is true. However, rulings have persuasive value in determining whether an employee's conduct constitutes willful misconduct. *Id.* at 124–25, 703 A.2d at 457.

We conclude that Claimant's inexact remark, which contained an ethnic slur, was not a credible threat. Torres' response was to identify a series of work rule offenses, which was more bureaucratic than fearful. In any case, Torres' subjective and idiosyncratic response to the words spoken by Claimant is not dispositive. The question of whether the seven words in "have a piece of Puerto Rican meat" constituted willful misconduct is a legal determination.

The Board's factual finding of a threat was based upon its erroneous belief that Claimant made the slur while simultaneously ordering *her* dog to "have" Torres' leg. Finding of Fact No. 7 is not supported by substantial evidence. In Finding of Fact No. 6, the Board found, in conclusory fashion, that Claimant threatened her supervisor. However, the threat finding simply restates the Board's misunderstanding of the evidence that it expressed in Finding of Fact No. 7, *i.e.,* that Claimant's conduct had both a spoken component and an action component. Thus, the Board's Finding of Fact No. 6 must also fall.

Because the Board's critical findings of fact are not supported by the record, there

was no basis for concluding that Claimant committed willful misconduct. Accordingly, we reverse its adjudication.

## ORDER

AND NOW, this 15th day of March, 2013, the order of the Unemployment Compensation Board of Review dated March 30, 2012, in the above-captioned matter is hereby REVERSED.