IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon A. Lountzis,                :
                                : No. 1354 C.D. 2015
               Petitioner    : Submitted: January 22, 2016
                                :
           v.                 :
                                :
Unemployment Compensation   :
Board of Review,              :
                                :
              Respondent   :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                        FILED: March 2, 2016

Sharon A. Lountzis (Claimant) petitions for review of the June 30, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision and held that Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant was employed as a full-time licensed practical nurse (LPN) with Golden Living Center (Employer), a skilled nursing care facility, from

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937), 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides than an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.

November 10, 2003, to March 27, 2015. Employer has a policy providing that, if a resident falls, a licensed nurse is to assess the resident for injuries and offer any necessary emergency treatment. Reproduced Record (R.R.) at 31a-32a.[2] The policy also sets forth ten tasks the licensed nurse is to perform, and it specifically requires the licensed nurse to record the resident's vital signs, response to neurological assessment, recent food and fluid intake, diagnosis, medications, and relevant history. R.R. at 31a.

On March 19, 2015, a certified nursing assistant (CNA) notified Claimant that a resident had fallen in the hallway. Claimant found the resident

---

[2] Employer's "Falls Change of Condition Guidelines for Completion" policy includes the following:

> **GUIDELINE STATEMENT**: To assess individual condition after a fall occurs and to identify the reason and/or risk factors for the fall in order to prepare a plan of care to reduce the potential for future falls.
> **DEFINITIONS:** Fall definition: A fall is a sudden change in position usually involving the floor. Finding a resident on the floor or lowering/assisting a resident to the floor is considered a fall.
> **GUIDELINE: Policy**: It is the policy of the center to complete the *Change in Condition Report-Post Fall Investigation Summary* after every known resident fall.
>
> **Procedure**:
> *If a resident falls* . . .
>
> 1. The licensed nurse will assess the resident for injuries and provide the necessary emergency treatment. Initiate the center 911 policy and procedure if appropriate.
>
> 2. The licensed nurse shall initiate the *Change of Condition Report-Post Fall Investigation Summary*. This shall be kept in the resident's medical record.

R.R. at 31a.

lying on the floor, did a quick visual assessment, and did not notice anything seriously wrong with the resident. Claimant knew that G.P., another LPN, was assigned to the fallen resident's unit and saw G.P. at the nurse's station. Claimant called out to G.P., told the CNA to stay with the resident, and walked toward the nurse's station.

Claimant and G.P. returned to the resident, and G.P. noted that, pursuant to Employer's policy, it was necessary to get a supervisor/registered nurse before moving her. Claimant returned to her work. G.P. left the resident with the CNA and went to find a supervisor. The supervisor arrived on the floor approximately fifteen minutes later,[3] and she performed an assessment.

Employer suspended Claimant on March 20, 2015, pending an investigation, and discharged her on March 27, 2015, for violating its policy. The local job center determined that Claimant was discharged for willful misconduct and was ineligible for benefits under Section 402(e). Claimant appealed, and a referee held a hearing at which both parties participated without benefit of counsel.

Kelly Brown, Employer's director of nursing, testified that Employer discharged Claimant for gross negligence after she failed to assess a fallen resident as required by Employer's policy.[4] Brown acknowledged that Claimant was not assigned to care for that particular resident, but she said that a nurse's duty is to care for all residents at the facility, regardless of assignments. Brown stated that since she became director of nursing in July 2014, she has emphasized through

---

[3] The witnesses gave slightly different estimates of the length of time that the resident was left alone on the floor with the CNA.

[4] Brown stated that Employer discharged two employees based on the March 19, 2015 incident.

3

nursing meetings and daily communications that all employees are responsible for all of the residents. Additionally, Brown testified that performing assessments is within the scope of practice of any licensed nurse, whether a registered nurse or an LPN. According to Brown, Claimant should have completed an assessment of the patient and assisted her back to her wheelchair. R.R. at 5a-6a.

Brown further testified that the "fall" policy, created in November 2014, was discussed at two separate nursing meetings that Claimant had attended. She added that Claimant was discharged after Employer completed its investigation into the incident, in accord with Employer's disciplinary policy. R.R. at 7a-11a, 15a-16a.

Claimant testified that an LPN is not permitted to move a patient without a supervisor's approval and she had always understood the policy to mean that a registered nurse was responsible for assessments. She said that she did not recall being told otherwise by Brown and was shocked to learn that she was being discharged for violating the policy. R.R. at 11a-14a. Claimant stated that she did not perform all of the tasks listed in the policy; "[s]ince it was not my patient, I left it up to her nurse and the supervisor. If there – she was in imminent danger, I would've done something then, if nobody was there, but I did pass it on to her nurse . . . ." R.R. at 13a.

Claimant testified that she shared Brown's beliefs that an employee should help any resident who needs assistance and said that she went back to her work because she believed that G.P. had assumed responsibility for the resident's care. R.R. at 16a-17a. Claimant acknowledged that she did not take the resident's vital signs, but she explained that in order to do so, she would have had to leave the

4

resident anyway and return to the nurse's station to retrieve her blood pressure cuff and other equipment. R.R. at 17a.

The referee found that: Employer's policy outlines the procedures to be followed when a resident falls; Claimant attended two meetings during which the policy was explained; and Employer makes it clear to employees that they are responsible for every resident, not just those directly under their care. (Findings of Fact Nos. 5-8.) Citing Claimant's own testimony, the referee further found that when Claimant was summoned to a resident who had fallen on the floor, she did only a visual assessment before leaving her to get the LPN assigned to her care. (Findings of Fact Nos 9-12.) The referee determined that Claimant did not perform the required assessment because the resident was not her assigned patient. Concluding that Claimant failed to demonstrate good cause for violating Employer's policy, the referee affirmed the job center's determination that she is ineligible for benefits under section 402(e) of the Law.

Claimant appealed to the Board, which affirmed the referee's decision. The Board adopted the referee's findings and conclusions and specifically noted that Claimant did not credibly establish good cause for her failure to follow Employer's reasonable policy. Claimant now appeals to this Court.[5]

---

[5] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010).

Initially we note that an employer contesting a claimant's right to benefits under Section 402(e) bears the burden of proving willful misconduct.[6] *Walsh v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). If the employer satisfies its initial burden, the burden then shifts to the employee to demonstrate good cause for her actions. *Lausch v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). A claimant establishes good cause by showing that her actions were justified or reasonable under the circumstances. *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 (Pa. Cmwlth. 2009). Whether or not an employee's actions amount to willful misconduct is a question of law subject to this Court's review. *Noland v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

Claimant first argues that Employer did not satisfy its burden to prove that she violated its policy. Claimant asserts that she acted reasonably and fulfilled her duties to the best of her ability; she had no reason to believe that she would be disciplined for her actions; and that she could not consciously violate Employer's rule because it is vague and does not specifically define who is obligated to take actions.

However, in making these arguments, Claimant relies on facts different from those found by the Board. In unemployment compensation proceedings, the Board is the ultimate fact-finder, empowered to determine the

---

[6] While the Law does not define the term willful misconduct, our courts have defined it as including: wanton or willful disregard for an employer's interests; deliberate violation of an employer's rules; disregard for standards of behavior which an employer can rightfully expect of an employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001).

6

credibility of witnesses and resolve conflicts in evidence; the Board's findings are conclusive on appeal where they are supported by substantial evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

Contrary to Claimant's assertions, Brown's testimony is substantial evidence demonstrating that Claimant knowingly violated Employer's policy. Brown testified that Claimant was present at two meetings during which the policy was reviewed with employees. Additionally, Claimant admitted that she performed only a quick visual assessment of the fallen resident. Thus, Employer's burden to prove a policy violation was met.

Claimant next argues that Brown's repeated references to the fact that the resident was left on the floor for fifteen minutes and Brown's failure to challenge Claimant's testimony that the resident did not require first aid indicate that Claimant's discharge was improperly based upon extraneous factors. In this regard, Claimant maintains that her conduct was consistent with applicable rules and her concern for the resident's well-being.

Again, Claimant relies on her preferred version of the facts, rather than those found by the Board. The fact that a party may have given a different version of the events or might view the facts differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 223 (Pa. Cmwlth. 2012). The law is clear that the Board is the ultimate finder of fact and arbiter of witness credibility. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385, 1388 (Pa. 1985).

Because Employer satisfied its burden of proof, the burden shifted to Claimant to show good cause for her actions. The Board did not credit Claimant's testimony that she acted in accordance with her understanding of Employer's policy; therefore, Claimant did not prove good cause for her conduct.

Our review of the record confirms that the Board's findings are supported by substantial evidence. Those findings, in turn, support the Board's conclusion that Claimant was discharged for willful misconduct rendering her ineligible for benefits under section 402(e) of the Law.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon A. Lountzis,             :
                                   : No. 1354 C.D. 2015
                Petitioner    :
                                   :
                v.              :
                                   :
Unemployment Compensation    :
Board of Review,                :
                                   :
              Respondent   :

O R D E R

AND NOW, this 2nd day of March, 2016, the order of the Unemployment Compensation Board of Review, dated June 30, 2015, is affirmed.

MICHAEL H. WOJCIK, Judge