IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angelo M. Rodriguez,                  :
                          Petitioner  :
                                      :
              v.                      :
                                      :
Unemployment Compensation             :
Board of Review,                      :   No. 50 C.D. 2015
                          Respondent  :   Submitted: January 29, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: June 14, 2016


          Angelo M. Rodriguez (Claimant) petitions this Court for review of the
Unemployment Compensation (UC) Board of Review's (UCBR) December 30, 2014
order affirming the Referee's decision finding Claimant ineligible for UC benefits
under Section 402(e) of the UC Law (Law).[1]   There are three issues for this Court's
review: (1) whether the UCBR erred by finding that Claimant committed willful
misconduct; (2) whether the UCBR erred by finding that Claimant did not have good
cause to violate Tredegar Film Product's (Employer) work rule; and, (3) whether the
UCBR's conclusion that Claimant failed to notify Employer of his absences in
accordance with Employer's attendance policies is supported by substantial evidence.
After review, we affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e) (relating to discharge for willful misconduct).

Claimant was employed as an extrusion product technician by Employer from March 13, 2013 until September 15, 2014.[2]   Section 4.3.1 of Employer's attendance policy (Policy) provides:

> 4.3.1.1 An employee who is going to be absent on a scheduled workday must notify [Employer] as soon as possible prior to the start of their [sic] scheduled shift . . . . The absence will be counted as an Absent With Notice . . . if the following criteria are met:
>
>> 4.3.1.1.1 Employees are required to provide notification no later than one hour after the start of the scheduled shift.
>>
>> 4.3.1.1.2 Employee speaks directly with his/her direct supervisor or designated backup.  An employee must not rely on another individual, including one's spouse, to notify or explain the reason for an absence to the above-mentioned individuals unless the employee is incapacitated and unable to make the call personally.
>
> 4.3.1.2 Failure to meet the above criteria constitutes an Absence Without Notice . . . .

Reproduced Record (R.R.) at 148a.  **Table 4.7.1.1 of the Policy provides that two absences without notice within a 12-month period will result in the issuance of an employment termination letter**.  *See* R.R. at 152a.  Claimant participated in Employer's new hire orientation and was made aware of the Policy.  *See* R.R. at 57a; *see also* R.R. at 64a.

Claimant worked night shifts which began on one date and ended on the following day.[3]  On September 8, 2014, Claimant asserted that he was injured while working the night shift.   The following morning Claimant was examined by Employer's physician and cleared to return to regular duty.  Claimant did not report to work on his next scheduled shift days - September 9, 12 and 13, 2014.  On the

---

[2] Claimant's last work day was September 8, 2014.

[3] Employer designated the work day by the starting date of the work shift.

2

morning of September 9, 2014, Claimant made several unsuccessful attempts to reach Employer's safety director by phone, and ultimately left a message for the safety director stating that Claimant needed to discuss his injury.[4] The safety director, however, did not return Claimant's call. Claimant did not contact his direct supervisor before the start of his scheduled shift on September 9, 2014 and did not work on that date. On September 12, 2014, Claimant spoke with his supervisor and called off work.[5] Although scheduled, Claimant did not work on September 13, 2014, and he did not notify Employer of his absence. On September 14, 2014, because Employer believed that Claimant had failed to notify Employer of his absences for three consecutive days, Employer notified Claimant that he should report to Employer's offices on September 15, 2014, instead of reporting to work. On September 15, 2014, Employer discharged Claimant for violation of Employer's Policy. Employer's discharge letter (Discharge Letter) stated, in relevant part:

> In accordance with the [Policy] and the collective bargaining agreement (CBA) . . . you have had multiple violations and 3 absences without notice (AWON) events which occurred on Tuesday, September 9, Friday, September 12 and Saturday, September 13. Therefore, after careful consideration of the seriousness of these actions and behaviors[,] [Employer] has determined that in accordance with the [P]olicy and the CBA[,] your employment is being terminated immediately.

R.R. at 28a.

---

[4] Claimant admitted that his attempts to reach Employer's safety director were related to arranging an examination by Employer's physician not for the purpose of calling off. *See* R.R. at 65a.

[5] Although Employer contended that Claimant did not call his supervisor to call off work on September 12, 2014, it produced only an email from Claimant's supervisor in support thereof. Because the email constituted hearsay and was uncorroborated, the UCBR did not consider it. In contrast, Claimant testified he did contact his supervisor on that date to report his absence. The UCBR found Claimant's testimony on this point credible.

3

Claimant applied for UC benefits. On September 30, 2014, the Scranton UC Service Center found Claimant ineligible for benefits under Section 402(e) of the Law. Claimant appealed and, on October 29, 2014, a Referee hearing was held. On November 4, 2014, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On December 30, 2014, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[6]

> Initially,
>
> [w]illful misconduct has been defined as: (1) a wanton and willful disregard of the employer's interests; (2) a deliberate violation of the employer's rules; (3) a disregard of the standards of behavior that an employer rightfully can expect from its employees; or (4) negligence that manifests culpability, wrongful intent, or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations. The employer has the burden of proving that it discharged an employee for willful misconduct. *Id*.
>
> When an employee is discharged for violating a work rule, the employer must prove the existence of the work rule, the reasonableness of the rule, the claimant's awareness of the rule, and the fact of its violation. The burden then shifts to the employee to prove that he or she had good cause for violating the rule. An employee establishes good cause by showing that his or her conduct was justified or reasonable under the circumstances.

*Adams v. Unemployment Comp. Bd. of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012) (citations omitted); *see also Henderson v. Unemployment Comp. Bd. of*

---

[6] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

*Review*, 77 A.3d 699, 718-19 (Pa. Cmwlth. 2013); *Bruce v. Unemployment Comp. Bd. of Review,* 2 A.3d 667 (Pa. Cmwlth. 2010).[7]

Claimant first argues that the UCBR erred when it found that he had committed willful misconduct.[8] Claimant asserts Employer failed to satisfy its burden of establishing that Claimant's failure to notify his supervisor in accordance with the Policy was intentional or deliberate given Employer's awareness of his

---

[7] This Court has explained that:

> 'Absenteeism alone, while grounds for discharge, is not a sufficient basis for denial of unemployment benefits. An additional element, such as lack of good cause for absence, is necessary.' *Runkle v. Unemployment Comp*[.] *B*[*d.*] *of Review*, . . . 521 A.2d 530, 531 (Pa. Cmwlth. 1987). Factors that are considered in determining whether absenteeism constitutes willful misconduct are: (1) excessive absences; (2) **failure to notify the employer in advance of the absence**; (3) lack of good or adequate cause for the absence; (4) **disobedience of existing company rules, regulations, or policies with regard to absenteeism**; and (5) disregard of warnings regarding absenteeism.

*Miller v. Unemployment Comp. Bd. of Review*, 131 A.3d 110, 113 (Pa. Cmwlth. 2015) (emphasis added).

[8] Specifically, in Claimant's first argument, he makes eight enumerated assertions: (1) Employer was on notice that Claimant might not be able to work since Claimant immediately reported his work injury; (2) Employer prohibited Claimant from visiting his own physician and required Claimant to see Employer's physician; (3) Claimant visited Employer's physician who released him to work, but because Claimant was still in pain, pursuant to Employer's physician's instructions, he sought advice from his personal physician and an orthopedist who agreed that Claimant should not return to work; (4) Claimant called Employer's safety director four times on September 9, 2014, left a detailed message about his injury circumstances but was not called back; (5) Claimant called twice on September 12, 2014, spoke with a shift supervisor and told the supervisor he was calling off; (6) Employer left a message for Claimant on Saturday, September 13, 2014 directing him not to return to work, and confirmed the message in a conversation on September 14, 2014; (7) as memorialized in an email, Employer was intolerant of Claimant's intention to obtain his own medical opinion and Claimant's need for time off, and was more concerned that Claimant would lower Employer's safety rating; and, (8) Claimant did not engage in willful misconduct where he was absent for a work injury, spoke with management (who were his supervisors' managers), offered to produce medical documentation to demonstrate his injury, and believed he was speaking with the correct individuals given that his injury involved a workers' compensation matter.

injury, his repeated attempts to contact Employer's safety director on September 9, 2014, his explicit prior notification to a supervisor of his absence on September 12, 2014, and given that he did not believe it necessary to contact Employer on September 13, 2014 because he was directed not to report to work that day.[9] We disagree.

Employer established the existence of the Policy, that Claimant was aware of the Policy, and that Claimant failed to comply therewith. Importantly, Claimant admitted that his multiple attempts at contacting the safety director on September 9, 2014 were not for the purpose of notifying Employer that he would be absent from work that day. There is no evidence demonstrating that Claimant attempted to contact Employer on September 9, 2014, **for the purpose of complying with the Policy notification provision**.

Claimant testified and the UCBR found that Claimant spoke with his supervisor on September 12, 2014, and called off of work. However, regarding September 13, 2014, the UCBR accepted Employer's testimony that no one contacted Claimant directing him not to report to work until September 14, 2014. Despite Claimant's testimony that he received the message on September 13, 2014 and was not required to notify Employer that he would be absent September 13, 2014, the

---

[9] Employer's witness testified that he did not leave the message not to report to work until September 14, 2014. Employer's witness explained:

> It was Sunday the 14th when – after [sic] I had spoken with [Claimant]. I forgot to tell him that, and I called him back and left [a] message on his machine on the 14th that he should not come in because he had already exceeded the three days no-call, no show.

R.R. at 59a. The UCBR found that "[o]n September **14**, 2014, [Employer] notified [Claimant] not to report to work[,] and set up a meeting[.]" R.R. at 199a (emphasis added). Thus, contrary to Claimant's assertion, the UCBR found that "[o]n September 13, 2014, [Claimant] did not notify [Employer] of his absence." *Id*.

6

UCBR found Employer credible on this matter.[10]  Thus, the record evidence supports the UCBR's findings that Claimant failed to notify Employer on two occasions that he would be absent from work.  We, therefore, conclude that the UCBR properly found that Claimant violated Employer's Policy.  *See, e.g.*, *Landy & Zeller, Attorneys at Law v. Unemployment Comp. Bd. of Review*, 531 A.2d 1183 (Pa. Cmwlth. 1987); *see also Logan v. Unemployment Comp. Bd. of Review*, 434 A.2d 877 (Pa. Cmwlth. 1981).

Claimant next argues that, even assuming he violated a work rule, he had good cause to do so.  Claimant contends that because his absence resulted from a work injury and involved workers' compensation, he reasonably believed that he was to communicate with Employer's safety director and Employer's human resources department.  Quoting *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 (Pa. Cmwlth. 2009), Claimant further asserts that "[p]recedent teaches that taking actions to advance a patient's health and safety will constitute good cause to violate an employer's work rule."  Claimant's Revised Br. at 24 (emphasis omitted).  We disagree.

Claimant offers no legal authority for his position that an employee is relieved of his obligation to adhere to an employer's call-off notification work rule if

---

[10]    The law is clear that the [UCBR] is the ultimate finder of fact and arbiter of witness credibility. *Peak v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 501 A.2d 1383, 1385, 1388 ([Pa.] 1985).  Thus, as long as the [UCBR's] factual findings are supported by substantial evidence, those findings are conclusive on appeal. *Geesey v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 381 A.2d 1343, 1344 ([Pa. Cmwlth.] 1978).  That [a c]laimant may have given 'a different version of the events, or . . . might view the testimony differently than the [UCBR], is not grounds for reversal if substantial evidence supports the [UCBR's] findings.' *Tapco, Inc. v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 650 A.2d 1106, 1108–09 ([Pa. Cmwlth.] 1994).

*Bruce v. Unemployment Comp. Bd. of Review*, 2 A.3d 667, 671-72 (Pa. Cmwlth. 2010).

his injury may involve a workers' compensation claim. Moreover, Employer's Policy clearly provided that "[a]n employee who is going to be absent on a scheduled workday must notify [Employer] as soon as possible **prior** to the start of their [sic] scheduled shift[.]" R.R. at 148a (emphasis added). Claimant admittedly did not attempt do so on September 9, 2014,[11] or on September 13, 2014. Further, assuming arguendo that Claimant's absence from work was necessary to "advance [his] health and safety[,]" his failure to **notify** Employer as required by the Policy was not.[12] *Roberts*, 977 A.2d at 16. Accordingly, we conclude that Claimant did not demonstrate good cause for his violation of Employer's Policy.

Finally, Claimant argues that the UCBR erred by finding Claimant ineligible for UC benefits after it concluded that Employer had only established **two** absences without notice, and Employer purportedly terminated Claimant's employment for **three** absences without notice. We disagree.

Employer's September 15, 2014 Discharge Letter to Claimant explained that "after . . . consideration of the seriousness of [multiple violations of Employer's policy and 3 absences without notice], [Employer] has determined that in accordance with the [P]olicy . . . [Claimant's] employment [was] being terminated. . . ." R.R. at 28a. Claimant's repeated violation of the absence without notice Policy constituted willful misconduct, and justified Employer's termination of Claimant's employment in accordance with Table 4.7.1.1 of the Policy. Although Employer proved only two of three stated violations, the UCBR recognized that Table 4.7.1.1 of Employer's

---

[11] Although Claimant attempted to reach Employer's safety director on that date, he did not do so to notify Employer that he would be absent.

[12] As support for Claimant's position that his alleged work injury constituted good cause for his failure to adhere to the Policy, Claimant notes that Employer's Policy does not penalize employees for absences due to work injuries and permits employees to provide medical documentation to justify their absences. However, the Policy violation that resulted in Claimant's employment termination was not the absence itself, but his repeated failure to properly notify his supervisor prior to those absences. Thus, whether Claimant's absence was permissible does not excuse Claimant's failure to **notify** Employer prior to his absence in accordance with the Policy.

Policy provides that the second absence without notice will result in the issuance of an employment termination letter.  Accordingly, the UCBR properly concluded that Claimant's employment was terminated for willful misconduct.

For all of the above reasons, the UCBR's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angelo M. Rodriguez,        :
            Petitioner      :
            :
          v.             :
            :
Unemployment Compensation    :
Board of Review,            :     No. 50 C.D. 2015
          Respondent    :

# O R D E R

AND NOW, this 14th day of June, 2016, the Unemployment Compensation Board of Review's December 30, 2014 Order is affirmed.

_____
ANNE E. COVEY, Judge