**DEPARTMENT OF CORRECTIONS,**
SCI–Camp Hill, Petitioner

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted Jan. 11, 2008.

Decided March 6, 2008.

Michael J. McGovern, Asst. Counsel, Camp Hill, for petitioner.

Beth S. Harris, Asst. Counsel and Gerard M. MacKarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

This case is before us on remand from our Supreme Court. We are again called upon to determine whether a corrections officer's fear of retaliation constitutes good cause for his failure to report and intervene in an assault on an inmate orchestrated by a fellow corrections officer. In particular, we are to review this case in light of the Supreme Court's decisions in *Grieb v. Unemployment Compensation Board of Review,* 573 Pa. 594, 827 A.2d 422 (2003) and *Navickas v. Unemployment Compensation Board of Review,* 567 Pa. 298, 787 A.2d 284 (2001), where the Court declined to adopt a heightened standard for willful misconduct based on the nature of the employment involved. After careful consideration, we hold the fear of retaliation does not justify the failure to perform an essential duty of a corrections officer. Therefore, we reverse the award of benefits.

The Department of Corrections (Employer) employed D. Lee Martin (Claimant) as a corrections officer 1 at SCI–

Camp Hill. On July 13, 2005, Claimant was working with two other corrections officers in housing unit J, which is divided into pods A and B by a sliding door. Corrections officers regulate housing unit activity through a control bubble. During the course of his shift, Claimant heard rumors that one of his coworkers enlisted four inmates to assault another inmate. Claimant did not report these rumors to his superiors.

While the inmates of housing unit J enjoyed yard privileges, the targeted inmate remained in his cell. Employer's policy forbids leaving cell doors open during yard exercise. Thus, Employer required the inmate to remain in his *locked* cell. Claimant, in pod B, heard screams coming from pod A. Approaching the control bubble, Claimant, seeing the inmate's cell door open, signaled his coworkers to stop the attack. The officers ignored Claimant, so he returned to pod B. The inmate sustained severe injuries as a result of the attack.[1]

Employer conducted an investigation into the assault. Initially denying any knowledge of the assault, Claimant ultimately confessed to hearing of the planned attack and failing to report it. Consequently, Employer suspended Claimant without pay pending further investigation. Claimant filed the instant claim for unemployment compensation benefits.

Based on Claimant's and Employer's filings, the Lancaster Service Center initially denied benefits. It found Claimant committed willful misconduct by violating Employer's work rule regarding treatment of inmates and, his reason for doing so, poor judgment, did not constitute good cause. Claimant appealed.

Before the referee, Employer presented evidence that its Code of Ethics provides, among other things:

1. Each employe[e] in the correctional system is expected to subscribe to the principle that something positive can be done for each inmate. This principle is to be applied without exception.

This involves an intelligent, humane and impartial treatment of inmates. *Profanity directed to inmates, or vengeful, brutal, or discriminatory treatment of inmates will not be tolerated.* Corporal punishment shall not be utilized under any circumstances.

2. Only the minimum amount of force necessary to defend oneself or others, to prevent escape, to prevent serious injury or damage to property or to quell a disturbance or riot will be used. *Excessive force, violence or intimidation will not be tolerated.* Fighting or horseplay while on duty is prohibited.

Certified Record (C.R.), Item 3 at 14–15 (emphasis added). In addition, Employer's policies prohibit cell doors from remaining open after hours without permission of the lieutenant on duty. Employer proved Claimant was aware of its policies.

Contesting Claimant's application for benefits, Employer asserted Claimant's failure to report the assault rumors, to intervene on the inmate's behalf during the assault, and to stop his coworker from carrying out the planned attack, constituted willful misconduct.

Claimant also testified. Admitting the duties of a corrections officer include the care, custody and control of inmates, Claimant nevertheless testified he did not report the rumors because he did not have any particular knowledge of when the as-

---

1. The brutality of the attack is evidenced by Claimant's testimony that he heard the assaulted inmate scream through the sliding door and, that, "[i]f you can hear [screaming] coming through the slider, it's loud." Notes of Testimony (N.T.), 2/27/06, at 24.

sault would take place. Also, Claimant stated he feared retaliation and shunning by other corrections officers as well as possible adverse consequences on his career, including more difficult assignments. Finally, Claimant rejected the idea of stopping the attack on his own. He testified he did not have a radio to call for help, and his personal safety would have been compromised by entering the inmate's cell alone.

■ Based on the evidence, the Unemployment Compensation Board of Review (Board)[2] concluded that while Employer met its burden of proving willful misconduct, Claimant established good cause for violating Employer's work rule. That is, Claimant reasonably feared retaliation by his coworkers. In support of its conclusion, the Board recounted evidence that corrections officers suffer retaliation after reporting their colleagues' misconduct.

On Employer's appeal, we reversed. Speaking through then-President Judge Colins, we expressed outrage with the Board's conclusion Claimant had good cause for violating Employer's work rule. We stated:

> [I]t shocks the conscience of this Court that the Board concluded that a corrections officer who refuses to report a threat of violence against an inmate and refuses to render aid to an inmate being beaten could use fear for his own personal safety as good cause justification for his refusal to render aid.
>
> Here, the undisputed evidence of record is that [Claimant] refused to report a threat of violence against a prisoner.

> The undisputed evidence of record is that [Claimant] was aware that an inmate was being beaten and [he] took no action to aid the inmate. [Claimant], *whose very job it is to protect inmates*, refused to render aid, because he was afraid that he would be shunned or that his belongings would be destroyed. [Claimant], believing that he might not receive assistance when needed, did nothing when he learned that fellow [c]orrections [o]fficers planned an attack on an inmate. [Claimant] did nothing when he knew that an inmate was being brutalized and knew that his fellow [c]orrections [o]fficers refused to aid the inmate. *[Claimant] did nothing; he rendered no assistance; he failed to call for aid; he did not call for back-up or attempt to call for back up.*

> . . .

> Being afraid that co-workers will shun you or destroy your personal property does not justify refusing to report a known threat and refusing to give aid to the person you have been charged with protecting. (Emphasis added.)

*Dep't of Corr., SCI–Camp Hill v. Unemployment Comp. Bd. of Review*, 919 A.2d 316, 319–20 (Pa.Cmwlth.), *rev'd and remanded*, 594 Pa. 34, 934 A.2d 1149 (2007). In addition, we cited *Williams v. Unemployment Comp. Bd. of Review*, 167 Pa. Cmwlth. 656, 648 A.2d 1321 (1994), which held that corrections officers, like law enforcement officials, occupy positions of greater responsibility and, therefore, must adhere to higher standards of conduct than those applied to other professions.

---

**2.** In this case, the Board made findings identical to those of the referee. We review the Board's findings because it is the ultimate fact-finder in unemployment compensation matters. *Gioia v. Unemployment Comp. Bd. of Review*, 661 A.2d 34 (Pa.Cmwlth.1995). We are limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Skowronek v. Unemployment Comp. Bd. of Review*, 921 A.2d 555 (Pa. Cmwlth.2007).

In a concurring opinion, this author agreed with the result and the tenor of the majority opinion but found its discussion of a heightened standard of behavior improper under *Navickas*. In *Navickas*, the Supreme Court rejected any distinctions on the standards of behavior an employer may rightfully expect of its employees based on the type and nature of the employment.[3]

On Claimant's appeal, the Supreme Court reversed our decision and remanded the case for reconsideration in light of *Grieb* and *Navickas*. In *Grieb*, a teacher inadvertently brought shotguns to school in violation of the school district's weapons policy. This Court denied unemployment compensation benefits on the ground the teacher's negligent conduct presented a safety risk jeopardizing the school district's effective operations. The Supreme Court reversed, noting Section 402 of the Unemployment Compensation Law (Law),[4] (relating to eligibility), does not permit *ad hoc* exceptions to the disqualification provisions such as a threat to public safety.

In *Navickas*, a nurse negligently administered medication to a patient. Denying unemployment compensation benefits, this Court held that because medical professionals were held to a higher standard of care, the nurse's negligence constituted willful misconduct. On further appeal, however, the Supreme Court rejected any imposition of a heightened standard for willful misconduct based on the nature of the employment involved.

■ At the outset, we briefly restate the law regarding willful misconduct as it is applied in the unemployment compensation arena. Section 402(e) of the Law states: "[a]n employe shall be ineligible for compensation for any week—[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...." Our Supreme Court defines willful misconduct as behavior evidencing a wanton or willful disregard of the employer's interests; a deliberate violation of the employer's work rules; a disregard of standards of behavior the employer can rightfully expect from its employee; and, negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Caterpillar, Inc. v. Unemployment Comp. Bd. of Review*, 550 Pa. 115, 703 A.2d 452 (1997). The employer bears the initial burden of proving a claimant engaged in willful misconduct. *Frazier v. Unemployment Comp. Bd. of Review*, 833 A.2d 1181 (Pa. Cmwlth.2003). Whether a claimant's actions rise to the level of willful misconduct is a question of law fully reviewable on appeal. *McLean v. Unemployment Comp. Bd. of Review*, 476 Pa. 617, 383 A.2d 533 (1978).

■ Once the employer meets its burden, a claimant may then prove he had good cause for his actions. *Id.* Good cause is established "where the action of the employee is justifiable or reasonable under the circumstances...." *Frumento v. Unemployment Comp. Bd. of Review*, 466 Pa. 81, 87, 351 A.2d 631, 634 (1976). The reasonableness of the employer's request and good cause for the employee's

---

**3.** The concurring opinion identified two Commonwealth Court decisions imposing a heightened standard of behavior for corrections officers and prison guards. *See Williams v. Unemployment Comp. Bd. of Review*, 167 Pa.Cmwlth. 656, 648 A.2d 1321 (1994) and *Lower Gwynedd Twp. v. Unemploy-*

*ment Comp. Bd. of Review*, 44 Pa.Cmwlth. 646, 404 A.2d 770 (1979). As these decisions are contrary to *Navickas*, they are now implicitly overruled.

**4.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802.

actions are evaluated in light of all the attendant circumstances. *Navickas; Blue v. Unemployment Comp. Bd. of Review*, 150 Pa.Cmwlth. 542, 616 A.2d 84 (1992). The question of whether a claimant proved good cause is also one of law and, therefore, is subject to our review. *Anderson v. Unemployment Comp. Bd. of Review*, 87 Pa.Cmwlth. 320, 487 A.2d 101 (1985); *Gwin v. Unemployment Comp. Bd. of Review*, 58 Pa.Cmwlth. 69, 427 A.2d 295 (1981).

■ Here, it is undisputed Claimant refused to perform his job duties when he neither reported rumors of the assault nor intervened on the inmate's behalf. Unquestionably, the mistreatment of an inmate is inimical to Employer's best interests. Claimant's actions also show an intentional disregard for the standards of behavior this Employer can expect from its employees charged with protecting inmates. In addition, Employer proved Claimant knowingly violated a work rule prohibiting the mistreatment of inmates. The reasonableness of this rule is obvious. Employer thus proved on several fronts Claimant engaged in willful misconduct. *Frazier. Cf. Oaster v. Unemployment Comp. Bd. of Review*, 705 A.2d 507 (Pa. Cmwlth.1998) (an employee's threat to improperly perform duties, which effectively undermines an employer's operations, constitutes willful misconduct). *But see Groover v. Unemployment Comp. Bd. of Review*, 134 Pa.Cmwlth. 617, 579 A.2d 1017 (1990) (employee's failure to report coworker's *questionable* acts did not constitute willful misconduct).

■ Nevertheless, Claimant asserts he demonstrated good cause for his actions: fear of retaliation and shunning by cowork-

ers. We recognize fear of *physical injury* may be a legitimate reason for refusing employment. *Sell v. Unemployment Comp. Bd. of Review*, 56 Pa.Cmwlth. 497, 424 A.2d 1030 (1981). However, based on the facts here, we cannot agree Claimant's reasons justify his refusal to perform one of the primary duties of a corrections officer.[5]

■ Generally, acceptance of employment indicates the terms of the employment are suitable. *Schnee v. Unemployment Comp. Bd. of Review*, 701 A.2d 994 (Pa.Cmwlth.1997). An employee may overcome this presumption by proving he was reasonably unaware of the unsuitable job conditions at the time he accepted the employment. *Id.* Here, Claimant agreed his job duties included the protection of inmates. Notes of Testimony (N.T.), 2/27/06, at 21. Moreover, he does not argue Employer failed to inform him of its policies regarding inmate safety or potential job risks, including the risks he now asserts.

Although Claimant contends fear of retaliation justified his actions, his argument disregards the very purpose for which Employer hired him. Claimant, aware of threats against an inmate, failed to report the threats or to aid the inmate when the threats ripened into a known, brutal assault. Simply stated, Claimant refused to do his job. Rather than aiding the inmate in any way, Claimant admittedly "went back over to the A side [of the housing unit] and ... sat down." N.T. at 24. Claimant's conduct was incompatible with his work responsibilities, and directly reflects on his ability to perform his assigned duties.

---

5. Contrary to Finding of Fact No. 10, Claimant did not testify he feared physical retaliation by his coworkers. Instead, Claimant testified his coworkers' slow response time to emergencies and unwillingness to work with Claimant could place him in dangerous situations. N.T. at 25–27, 29.

This conclusion is consistent with our Supreme Court's views in the distinct but related area of labor law. Our Supreme Court recognizes inmate protection is an essential component of a corrections officer's duties. *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988) (public employer in grievance arbitration is exclusively vested with governance and management of prisons and with safe-keeping of inmates; accordingly, public employer must have unfettered power to discharge employee who subjected inmate to physical abuse). As indicated by *Musser,* a primary duty of a penal institution is to protect the inmates which it houses. This duty is performed through its employees, and a blatant disregard of that essential duty cannot be tolerated.

Here, Employer's Code of Ethics placed an affirmative duty on Claimant to report his coworker's misconduct so as to protect and aid the targeted inmate. The purpose of Employer's Code of Ethics is to avoid exactly what happened here regardless of who instigated the assault. Comparing Employer's interest of protecting its inmates from harm with Claimant's reasons for failing to do his job, we cannot conclude Claimant actions constituted good cause. *Cf. Wolfe v. Unemployment Comp. Bd. of Review,* 57 Pa.Cmwlth. 255, 425 A.2d 1218 (1981) (claimant lacked justification for retaliatory assault after a coworker hit her); *Sorge v. Unemployment Comp. Bd. of Review,* 29 Pa.Cmwlth. 282, 370 A.2d 818 (1977) (claimant's assault of coworker not justified by coworker's abusive language); *Unemployment Comp. Bd. of Review v. Kullen,* 21 Pa.Cmwlth. 488, 346 A.2d 926 (1975) (an employee's poor attitude must be coupled with some specific conduct adverse to the employer's interests before a conclusion of willful misconduct is justified).

We do not hold that there can never be good cause for violating Employer's Code of Ethics. There may be emergency circumstances where protection from immediate physical harm may justify a violation of the work rules. Indeed, limited self-defense is specifically referenced in the Code of Ethics. Here, however, we find no good cause for Claimant's willful failure to report either the prospective assault or the on-going assault itself. Thus, we do not resolve this matter based on a higher standard for corrections officers in a willful misconduct inquiry; rather, we resolve this matter based on the failure of Claimant to affirmatively prove good cause for violating a known work rule. Accordingly, we reverse the Board's order granting Claimant unemployment compensation benefits.

### *ORDER*

AND NOW, this 6th day of March, 2008, the May 22, 2006 order of the Unemployment Compensation Board of Review is **REVERSED.**