# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Homeland Center, : 
               Petitioner : 
                : 
           v. : No. 1008 C.D. 2016
                : Submitted: December 9, 2016
Unemployment Compensation : 
Board of Review, : 
               Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED:  March 29, 2017**

Petitioner Homeland Center (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board reversed the decision of a Referee, thereby granting unemployment compensation benefits to Bonnie Barrick (Claimant). For the reasons set forth below, we affirm the Board's order.

While some of the factual findings in this case are contested, and discussed below, the basic facts of the underlying conflict are not. Claimant was employed at Homeland Center as an administrative assistant. (Reproduced Record (R.R.) at 88a.) She informed a coworker, Jill Yeager (Yeager), that she experienced personal problems after breaking up with her boyfriend. (*Id.* at 28a.) She shared with Yeager that she created a fake Facebook account to keep informed on her ex-boyfriend and purchased a GPS device to track his whereabouts and

discover the address of his new girlfriend's house. (*Id.*) Yeager shared this information with her superiors, who then required Claimant to attend counseling and conditioned her continued employment on the directive not to discuss her relationship with coworkers. (*Id.* at 93a.) Employer discharged Claimant after she confronted Yeager regarding her ex-boyfriend. (*Id.* at 28a.)

Claimant filed for unemployment compensation benefits on November 15, 2015, after being discharged. (*Id.* at 31a.) The Altoona UC Service Center (Service Center) issued a notice of determination finding Claimant ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. (*Id.*)

Claimant appealed, and a Referee conducted an evidentiary hearing. Three employees testified for Employer. Claimant testified on her own behalf.

Nicol Brown (Brown), Employer's Human Resources Director and Compliance Manager, testified that Employer discharged Claimant for failure to comply with the terms of a document titled "Conditions of Continued Employment." (*Id.* at 89a.) She testified that Claimant signed the document on November 9, 2015, and that this agreement, along with an oral directive, prohibited Claimant from engaging in any action or discussion regarding her ex-boyfriend. (*Id.*) Brown testified that Claimant was discharged for "inappropriately and offensively" confronting Yeager after witnessing Yeager speak with her ex-boyfriend. (*Id.*) Brown further testified that Claimant was required to meet with the "Employee Assistance Provider" to discuss what Brown characterized as

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant's "self-destructive behaviors and the appropriate coping skills." [2] (*Id.* at 90a.)

Employer's President and Chief Executive Officer, Barry Ramper (Ramper), testified that he participated in the meeting with Brown and Claimant on November 9, 2015. (*Id.* at 92a.) Ramper testified that he explained to Claimant that further discussing matters relating to her ex-boyfriend at work would result in her discharge. (*Id.*) Ramper testified that Claimant understood and accepted his directive. (*Id.* at 93a.)

Yeager, who is employed as an Aide Supervisor for Employer, testified that after she reported to her supervisors what Claimant shared with her regarding Claimant's personal struggles and Employer addressed the issues with Claimant, Claimant hugged her and thanked her. (*Id.* at 95a.) Yeager testified that two days later, on November 11, 2015, she pulled into her work parking lot and observed Claimant's ex-boyfriend leaving the building. (*Id.* at 94a.) She testified that she spoke with the ex-boyfriend for less than a minute. (*Id.*) After that short interaction, Yeager testified that she noticed Claimant in the window of the office building, looking down upon her. (*Id.*) Yeager testified that when she arrived at the entrance of the office building, Claimant confronted her and asked why she needed to tell the ex-boyfriend everything. (*Id.*) Yeager testified that Claimant

---

[2] Brown stated that she signed a letter that was sent to Claimant confirming her termination. (R.R. at 86a.) The Referee admitted the letter into evidence. (*Id.*) The letter indicates that one of the reasons for the directive to Claimant was that her "behaviors and instability have created angst in the workplace and a negative change in [Claimant's] attitude when asked to complete an assignment." (*Id.* at 16a-17a.) During the hearing before the Referee, however, no witness testified to either the perceived "angst" or the change in Claimant's attitude at the time of the directive.

said what Yeager did was "something an enemy would do" and because of Yeager, Claimant was in jeopardy of losing her job. (*Id.*) She described that during the exchange, Claimant was very direct, confrontational, and forward. (*Id.* at 95a.)

Claimant testified last, and she primarily disagreed with Yeager's characterization of their exchange. (*Id.* at 96a.) She testified that she did not approach Yeager aggressively, nor was she watching Yeager out the window. (*Id.*) Claimant testified that she approached Yeager when she went to take the mail outside, and she merely asked Yeager "why she did what she did." (*Id.*) Claimant added that she believed Yeager should not have brought that information into her professional life, because her troubles with her ex-boyfriend did not affect her performance or ability to do her job. (*Id.*) Further, on cross-examination, Claimant testified that she was aware at the time she spoke with Yeager that the exchange was in violation of the directive she received to not discuss her ex-boyfriend with her coworkers. (*Id.* at 97a.)

Following the evidentiary hearing, the Referee issued a decision, affirming the Service Center's determination, thereby determining Claimant ineligible for benefits pursuant to Section 402(e) of the Law. (*Id.* at 103a.)

Claimant then appealed to the Board, which reversed. (*Id.* at 119a.) In so doing, the Board issued its own findings of fact and conclusions of law. (*Id.* at 118a-119a.) The Board made the following findings:

1. The claimant was last employed by Homeland Center as a full-time administrative assistant from May 6, 2013, until November 20, 2015, at a rate of pay of $21.92 per hour.

2. The ex-boyfriend of the claimant works for the employer at the same workplace as the claimant did.

4

3.  Due to events that occurred between the claimant and her ex-boyfriend outside of the workplace, the employer required the claimant to sign a condition of continuing employment agreement on November 9, 2015.

4.  The claimant agreed to be evaluated by the employer's Employee Assistance Program.

5.  As part of the agreement, the claimant agreed not to engage in any action or discussions in the workplace regarding her ex-boyfriend, or she may be terminated.

6.  On November 11, 2015, the claimant confronted the aide supervisor who was observed by the claimant to be talking to her ex-boyfriend in the parking lot.

7.  The claimant said to the aide supervisor, "What you did to me is something only an enemy would do, and my job is now in jeopardy."

8.  The aide supervisor reported the conversation to the employer.

9.  The employer discharged the claimant on November 20, 2015, for violating the conditions of continuing employment agreement.

(*Id.*)   The Board reasoned that Employer failed to demonstrate that requiring Claimant to sign the Conditions of Continued Employment was reasonable. (*Id.* at 119a.)  The Board further reasoned that the misconduct was not sufficiently work-related to warrant a denial of benefits.  (*Id.*)  The Board reversed and granted unemployment compensation benefits to Claimant.  (*Id.* at 120a.)

5

On appeal,[3] Employer argues that the Board's findings of fact numbers 2, 3, 5, 6, and 7 are not supported by substantial evidence. Employer alleges that the Board erred in concluding that its directive to Claimant—requiring that she sign the Conditions of Continued Employment and not discuss her ex-boyfriend—was unreasonable. Employer contends that it was reasonable because Employer had a responsibility to "protect the health, safety and welfare of its employees." (Homeland Br. at 10.) Employer emphasizes that Claimant added to the stress of the office environment by confronting Yeager. Employer also argues that the Board erred as a matter of law by determining that Claimant's noncompliance was not sufficiently work-related.[4]

In response, the Board argues that Employer provided no reason that Claimant's personal life outside of work, prior to the November 9, 2015 meeting and the November 11, 2015 confrontation with Yeager, warranted the directive or Conditions of Continued Employment. The Board also argues that the alleged

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] Employer has failed to adequately develop arguments in its brief as required by Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, which provides:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, *followed by such discussion and citation of authorities* as are deemed pertinent.

Pa. R.A.P. 2119(a) (emphasis added). This Court has held that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1259 n.11 (Pa. Cmwlth. 2002). To the extent that Employer provides assertions regarding the law in Pennsylvania, but without any citation to legal authority, we decline to address them.

6

misconduct was not "connected with [Claimant's] work," as required under Section 402(e) of the Law in order to find someone ineligible.

First, we will consider Employer's arguments that several of the Board's findings of fact are not supported by substantial evidence. Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 604 A.2d 1159, 1161 (Pa. Cmwlth. 1992). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). "The fact that [the employee] may have produced witnesses who gave a different version of the events, or that [the employee] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1107 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Moreover, in an unemployment case the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness

credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004).

Employer challenges finding of fact number 2, which provides that Claimant's ex-boyfriend worked for Employer at the same workplace. Employer argues that there is no evidence in the record that the ex-boyfriend worked for Employer. Rather, Employer contends that the ex-boyfriend worked at the same workplace, but not for Employer. The testimony of the parties before the Referee does not indicate the identity of Claimant's ex-boyfriend or his employer. A statement from Employer's witness Yeager that Employer introduced into evidence indicates that the ex-boyfriend is a non-employee. (R.R. at 23a.) No other evidence appears to exist in the record. We agree, therefore, that substantial evidence does not exist to support finding of fact number 2. Employer, however, does not suggest that this error compels reversal.

In a similar light, Employer challenges finding of fact number 3, which provides that the conflict between Claimant and her ex-boyfriend was outside of the workplace. Employer again contends that there is no evidence on record with which the Board should have concluded that the conflict between the two occurred outside of the workplace. The Board appears to have based this finding on Claimant's testimony that it was Yeager, and not Claimant, who brought the information about Claimant's personal struggles into Claimant's professional life by sharing that information with her supervisors. (*Id.* at 96a.) The Board acted within its authority by determining the credibility of Claimant's testimony. *See Peak*, 501 A.2d at 1386. Moreover, this testimony constituted

8

"relevant evidence that a reasonable mind might consider adequate to support" this finding of fact. *Hercules, Inc.*, 604 A.2d at 1161. We conclude, therefore, that substantial evidence exists in the record to support finding of fact number 3.

Employer's arguments concerning the remaining contested findings of fact are also without merit. Regarding finding of fact numbers 5 and 6, Employer initially appears to contest them, but later states that Employer is merely clarifying the record. (Homeland Reply Br. at 6-7.) In fact, Employer actually does not contest finding of fact number 5, but merely seeks to elaborate on it. Employer argues that finding of fact number 6 shows the Board did not credit Claimant in one instance, and thus should have determined her not credible in all of her testimony. In making credibility determinations, however, the Board may accept or reject the testimony of any witness in whole or in part. *Peak*, 501 A.2d at 1388. Similarly, with respect to finding of fact number 7, Employer argues that the Board ignored credible testimony by Yeager and Ramper. Employer appears to argue that the Board should have made additional findings based on this credible testimony. As previously stated, the Board is entitled to make such credibility determinations and corresponding factual findings. *Id.* at 1386. Because Employer is not contesting whether these findings are supported by substantial evidence, but essentially seeking more favorable findings, we find no error by the Board.

We now turn to Employer's argument that the Board erred in concluding that Employer failed to establish that Claimant engaged in willful misconduct. Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected

9

with his work." The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

The burden of proving willful misconduct rests with the employer. *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Where an employer seeks to prove willful misconduct by showing that the claimant violated the employer's rule, directive, or instruction, the employer must demonstrate the existence of the reasonable rule, directive, or instruction, and that the claimant violated it. *Devine v. Unemployment Comp. Bd. of Review*, 429 A.2d 1243, 1244 (Pa. Cmwlth. 1981). Moreover, the employer must establish that the claimant's actions were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985). Whether the employee's refusal constitutes willful misconduct depends upon the reasonableness of the request and the reasonableness of the refusal. *Behe v. Unemployment Comp. Bd. of Review*, 467 A.2d 1208, 1209 (Pa. Cmwlth. 1983).

Once the employer meets its burden, the burden shifts to the claimant to show good cause for his refusal to comply with the rule. *Great Valley Publ'g v. Unemployment Comp. Bd. of Review*, 136 A.3d 532, 536 (Pa. Cmwlth. 2016). A claimant has good cause if his actions are reasonable and justifiable under the circumstances. *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). Whether an employee's conduct constitutes willful

misconduct and whether a claimant has proved good cause are questions of law subject to our review. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011, 1015-16 (Pa. Cmwlth. 2008).

Here, the Board determined that Employer failed to demonstrate that its directive was reasonable. We agree. Employer does not explain why its directive to prevent Claimant from speaking about her personal life was reasonable *at the time Employer gave her that directive on November 9, 2015*. Rather, Employer primarily argues that its concern was vindicated by the ultimate confrontation with Yeager on November 11, 2015. By addressing the alleged misconduct to justify the directive, Employer conflates the two steps to our analysis; we must first determine the reasonableness of the rule or directive. *Devine*, 429 A.2d at 1244. Aside from emphasizing the November 11, 2015 confrontation, Employer's only remaining arguments for the reasonableness of the directive are first, caring for Claimant's health, and second, eliminating stress from the workplace. Employer failed to present any evidence that it was reasonable to prevent Claimant from speaking about her personal issues with a co-worker in order to protect Claimant's own health and well-being. Employer likewise failed to provide testimony of any instances prior to its directive that demonstrated how Claimant's conduct was causing stress or disruption in the workplace. Employer simply failed to meet its burden. Thus, the Board did not err in concluding that Employer failed to establish that Claimant engaged in willful misconduct when she violated Employer's unreasonable directive.[5]

---

[5] Because we have concluded that the Board correctly determined that Employer did not prove its directive was reasonable, we need not address the Board's determination that this was not work-related.

11

Accordingly, we affirm the decision of the Board.


_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Homeland Center, :
                    Petitioner :
                               :
        v.                     :        No. 1008 C.D. 2016
                               :
Unemployment Compensation      :
Board of Review,               :
                    Respondent :

# **O R D E R**

AND NOW, this 29th day of March, 2017, the decision of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge