# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina M. Norris,                          :
                        Petitioner       :
                                         :
          v.                             :     No. 1757 C.D. 2016
                                         :     Submitted: March 31, 2017
Unemployment Compensation                :
Board of Review,                         :
                        Respondent       :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: June 13, 2017**


Tina M. Norris (Claimant), representing herself, petitions for review from an order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's decision and denied her unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1] She argues the Board erred in concluding she did not perform tasks within her job description. She also asserts that her conduct did not warrant the first of three written pre-termination warnings. Upon review, we affirm.


## I. Background

Claimant worked for Bluestem Brands, Inc. (Employer) as a telephone sales agent, taking catalog orders from customers and answering customer

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e) (relating to willful misconduct).

questions[2] for almost two years until her discharge from employment. In addition to her hourly rate, Claimant received commissions on her sales.

Claimant applied for UC benefits, which the local service center denied. Claimant appealed to a referee.

The referee held a hearing where Claimant testified on her own behalf and her supervisor (Supervisor) testified on behalf of Employer. The record reflects the following.

On three occasions between February and April 2016, Employer verbally coached Claimant regarding her customer service. Referee's Hr'g, Notes of Testimony (N.T.), 8/15/16, at 9; 15. Claimant admitted she "receive[d] warnings for continually transferring people." N.T. at 15.

In May 2016, Claimant sent Employer an email objecting to performing customer service duties. She complained that such duties unfairly reduced her compensation as a sales agent because she had less time to earn commissions.

Employer issued Claimant a final written warning on June 13, 2016. After two more incidents of transferring calls to customer service the following week, Employer terminated Claimant's employment. At the hearing, Supervisor played recordings of Claimant's last two improper transfers. Supervisor testified the job description remained consistent throughout Claimant's tenure. Id. at 17.

---

[2] Employer maintained separate phone lines and call areas for sales and customer service.

Claimant testified she was not responsible for customer service calls, and handling such calls, without earning a commission, constituted an unreasonable burden and "wage theft." N.T. at 15. She claimed her termination was retaliatory because she was in litigation with Employer regarding the alleged overtime and wage theft. Id. When asked about the recordings of the two improper transfers, Claimant maintained she had non-specific "phone issues." Id. at 16. She also challenged the accuracy of the recordings of the two improper transfers because the recordings did not indicate the date or time of call.

Based on the evidence, the referee found Claimant was required to answer misdirected customer service calls, and was permitted to refer more complicated calls to the customer service area. Referee's Dec., 8/17/16, Findings of Fact (F.F.) Nos. 3-4. He also found Claimant received three verbal warnings regarding her transfers of calls to the customer service area. F.F. No. 5. Then, she received a final written warning for unnecessary transfers of calls to customer service, and making unprofessional comments to customers. F.F. No. 6. At that time, Employer advised Claimant additional misconduct would result in termination of her employment. F.F. No. 7. After Claimant transferred additional calls to customer service on June 15 and 17, following the final warning, Employer discharged her. F.F. Nos. 9-11.

The referee determined Claimant committed willful misconduct, concluding she received repeated warnings regarding her transfers of customer service calls, and she continued to improperly transfer calls without good cause. Claimant appealed to the Board.

3

The Board affirmed, adopting and incorporating the referee's findings and conclusions, with the omission of Finding of Fact No. 8, (that three final warnings would result in termination), as irrelevant. The Board specifically did not credit Claimant's testimony that she attempted to make volume adjustments before transferring calls to customer service. In addition, it reasoned:

> [w]hile [C]laimant argues that she was a telephone sales agent and was not hired to answer customer service calls, the Board notes the calls [she] transferred to customer service were sales related and were not outside of her job duties. [C]laimant has not established good cause for transferring sales related calls to customer service.

Bd. Op., 10/6/16, at 1. The Board disregarded extra-record facts Claimant submitted on appeal. Claimant petitioned for review to this Court.

## II. Discussion

On appeal,[3] Claimant contends the first written warning should be voided, such that she received only two written warnings, not three. She also asserts Employer did not establish grounds for issuing the last two warnings to warrant her termination. Specifically, she challenges the veracity of Employer's recordings because they do not indicate the time or date of the calls. She maintains that customer service duties are not part of her job description as a sales agent. In addition, she argues Employer unfairly imposed customer service duties on female sales agents when they are paid less than male customer service representatives.

---

[3] Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. Doyle v. Unemployment Comp. Bd. of Review, 58 A.3d 1288 (Pa. Cmwlth. 2013).

4

## A. Willful Misconduct

An employee is ineligible for UC benefits in any week, "[i]n which [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work...." 43 P.S. §802(e). Although not statutorily defined, the courts define "willful misconduct" as: "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014) (citing Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422 (Pa. 2002)). The employer bears the initial burden of establishing a claimant engaged in willful misconduct. Id. Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal. Id. at 1010.

In UC cases, the Board is the ultimate fact-finder and is empowered to resolve all conflicts in the evidence, witness credibility, and weight accorded to the evidence. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is substantial evidence to support the findings actually made. Id. Where substantial evidence supports the Board's findings, they are conclusive on appeal. Id. In addition, we examine the testimony in the light most favorable to the party who prevailed before the fact-finder, giving that party the benefit of all reasonable inferences from the testimony. Id.

5

There is no dispute that Claimant repeatedly, after verbal and written warnings, transferred calls she received as a sales agent to customer service. N.T. at 9. Indeed, Claimant admitted she was repeatedly counseled and warned about her customer service and transferring calls to customer service representatives instead of assisting the customers herself. N.T. at 15. The record is also clear that Claimant received calls from customers on the sales line and transferred them to customer service representatives.

During the hearing, Supervisor testified regarding Claimant's refusal to perform customer service duties. She also played recordings of two improper transfers that led to Claimant's discharge. Both recordings were of short duration. In the first call, the recording reflects that when a customer had difficulty hearing Claimant, she transferred the call to customer service. Id. at 7. In the second call, Claimant started verifying information for an order, and when she could not understand the customer, she transferred the call to customer service. Id.

Relevant here, there is no indication on the recordings that Claimant attempted to adjust the volume before transferring the calls. In the first call, Claimant did little more than answer the phone before transferring the customer. Id.

Handling inbound customer calls was an essential part of Claimant's duties as a telephone sales agent. Employer's job description includes customer assistance, and answering customer inquiries, to provide a courteous customer experience. See Certified Record, (C.R.) Item No. 8 (Appeal of Notice of Determination). Sales agents' essential duties include referring "more complicated

customer service questions to the Customer Service area." Id. (emphasis added); see F.F. No. 4.

Here, the Board credited Supervisor's testimony regarding Claimant's job duties. The Board specifically did not credit Claimant's testimony that she attempted volume adjustment prior to transfers. Bd. Op. at 1. Such credibility determinations are beyond our review on appeal. Ductmate.

Further, the Board's findings are supported by the record. The recordings show Claimant did not transfer either call in response to a complicated customer service question. Supervisor testified the recordings were only two examples of Claimant's misconduct. The testimony of both Claimant and Supervisor supports that Employer provided several verbal coachings regarding Claimant's conduct prior to issuing a final warning. See C.R., Item No. 3 (Employer's Submission to Service Center, Ex. 8, Final Discharge). The warning history shows four occasions on two days in which Claimant transferred sales calls to customer service and engaged in unprofessional conduct with customers. Id.

Claimant's argument that she was entitled to three "final" warnings before discharge lacks merit. There is no evidence Claimant's discharge violated Employer's disciplinary policy. Claimant also submitted no support for her belief that she was entitled to three *written* warnings prior to discharge. She conceded she received several verbal warnings regarding customer service issues.[4] N.T. at 15.

---

[4] Employer also counseled Claimant for attendance issues and verbal threats. See Certified Record, Item No. 3.

7

Because Employer established Claimant refused to handle customer service calls in accordance with her job duties, and repeated coaching and warnings, it met its burden to prove willful misconduct.

**B. Good Cause**

Once the employer meets its burden of proving willful misconduct, the burden shifts to the claimant to prove she had good cause for her actions. Dep't of Corr. v. Unemployment Comp. Bd. of Review, 943 A.2d 1011 (Pa. Cmwlth. 2008). Good cause is established "where the action of the employee is justifiable or reasonable under the circumstances ...." Id. at 1015 (quoting Frumento v. Unemployment Comp. Bd. of Review, 351 A.2d 631, 634 (Pa. 1976)).

Here, Claimant attempts to justify her refusal for performing customer service duties based on perceived inequities between different types of employees. She claims Employer's division of labor between sales agents and customer service representatives is unfair, particularly when female sales agents are paid less per hour than male customer service representatives. She also argues customer service calls reduce her ability to earn commissions.

Disagreement with an employer's decisions regarding wages and assignments among staff is not good cause to justify refusal to perform certain duties. Waltz v. Unemployment Comp. Bd. of Review, 533 A.2d 199 (Pa. Cmwlth. 1987) (wage and overtime disputes are properly addressed in separate forum, and do not constitute good cause for refusal). A claimant's belief that she is entitled to overtime compensation is also not good cause for refusal. Id.

8

Further, there is no record evidence to support Claimant's allegation that Employer's division of labor is gender-based. Critically, Claimant did not develop the record to support such a claim. She bore the burden of proving the reason for her refusal to perform customer service duties. Dep't of Corr.

We agree with the Board that Claimant did not establish good cause for transferring telephone calls she received as a sales agent to the customer service area. The Board did not credit Claimant's testimony that handling such calls exceeded her duties as a sales agent. It specifically found "the calls [Claimant] transferred to customer service were sales related and were not outside of her job duties." Bd. Op. at 1. As a result, she lacked good cause for transferring them to customer service.

The record is clear that despite receiving multiple verbal and written warnings regarding her handling of incoming calls, Claimant continued to transfer sales-related calls to customer service without good cause. N.T. at 8-9; F.F. Nos. 5-7, 9-10. Therefore, the Board did not err in determining Claimant was ineligible for UC benefits based on her willful misconduct. See also Wilson v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 1007 C.D. 2013, filed December 4, 2013) (unreported) (holding that transferring customer calls in order to avoid customer service responsibilities without good cause constitutes disqualifying willful misconduct).

9

## III. Conclusion

For the foregoing reasons, we affirm the Board's order.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tina M. Norris,               :
            Petitioner      :
                          :
            v.                :    No. 1757 C.D. 2016
                          :
Unemployment Compensation   :
Board of Review,          :
            Respondent    :

## **O R D E R**

**AND NOW**, this 13th day of June, 2017, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                          _____
                                          ROBERT SIMPSON, Judge