# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Krista I. Satterly,                :
             Petitioner       :
                                    :
         v.                        :    No. 128 C.D. 2019
                                    :    Submitted: December 12, 2019
Unemployment Compensation    :
Board of Review,                :
             Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE ANNE E. COVEY, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**               **FILED: January 14, 2020**

Krista I. Satterly (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board).[1] The Board affirmed a decision of the Unemployment Compensation Referee (Referee), denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[2] relating to willful misconduct. For the reasons set forth below, we affirm the order of the Board.

---

[1] Athens Area School District (Employer) filed a notice of intervention on February 14, 2019. The Board subsequently informed the Court that it would not be filing a brief in this matter and, thereafter, filed a notice of non-participation pertaining to argument.

[2] Act of Dec. 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant filed for unemployment compensation benefits on August 26, 2018, after being discharged for cause from her employment as a full-time fifth grade teacher with Employer at the Lynch Bustin Elementary School. (Certified Record (C.R.), Item No. 1 at 1.) The Altoona UC Service Center (Service Center) determined that Claimant was ineligible for unemployment compensation benefits for the waiting week ending on September 1, 2018. (C.R., Item No. 5.) Claimant appealed the Service Center's determination, and a Referee conducted a hearing. (C.R., Item Nos. 6, 9.) At the hearing, Employer presented the testimony of John Toscano (Toscano), and Claimant testified on her own behalf. (C.R., Item No. 9.)

Toscano testified that he is employed as the Principal at Lynch Bustin Elementary School. (*Id.* at 4.) At the first faculty meeting of the 2017-2018 school year, he instructed all teachers to familiarize themselves with the policies as to why a teacher may be terminated. (*Id.* at 18, 20.) He cautioned teachers about contacting students via social media because any inappropriate conduct with students could result in the termination of a teacher's employment or teaching certificate. (*Id.*) Toscano admitted that there are no explicit school rules or policies in regard to teachers interacting with students on social media, teachers texting students, teachers eating lunch with students, or teachers giving students gifts. (*Id.* at 21.) He testified that an explicit policy was unnecessary, because he would expect teachers to understand and to know that they could not have inappropriate relationships with their students. (*Id.*)

Toscano testified that, after receiving concerns from a teacher and a parent regarding after-school communications between Claimant and two of her

students, Student 1 and Student 2,[3] he commenced an investigation into the reports. (*Id.* at 11.) He explained that during the investigation he spoke with Claimant, Claimant's students, other teachers, Students 1 and 2, the parents of Student 1, and the parents of Student 2. (*Id.*)

Over the course of the investigation, Toscano obtained text messages from Claimant that Claimant sent to Student 2. (*Id.*) Claimant admitted she had initiated contact and text messaged with Student 2 after school hours. (*Id.* at 12.) Included in these messages, Claimant asked Student 2 if it was okay if she texted him, how his day was going, and if he was still happy. (*Id.*)

Claimant texted both Students 1 and 2, asking if she could come to their houses and if they wanted to see another movie, and she sent them music with explicit lyrics. (*Id.* at 17.) Claimant failed to provide any reason as to why she repeatedly contacted these two students after hours on a personal level that was outside of a normal student and teacher relationship. (*Id.*) Additionally, Claimant gave Student 1 and Student 2 candy and $10 iTunes gift cards, but she did not give these same gifts to the rest of her students. (*Id.* at 18.)

Based on his eleven years' experience as principal, Toscano believed Claimant's behavior to be inappropriate and an unacceptable and unprofessional standard of practice for a teacher. (*Id.* at 19.) Toscano testified that, at the conclusion of his investigation, he determined that Claimant "went above and beyond the scope of her job responsibilities, [and] acted inappropriately" by contacting students via text message and by looking for students' contact information. (*Id.* at 16.) At which point, Employer put Claimant on administrative

---

[3] Both Students 1 and 2 were fifth-grade male students in Claimant's classroom. (C.R., Item No. 3 at 3-5; Item No. 9 at 11.)

3

leave on April 4, 2018. (*Id.* at 16, 26.) During a meeting with Claimant on May 4, 2018, Toscano testified that Claimant acknowledged her texting was inappropriate. (*Id.*; Employer's Ex. at E24.) In addition, Toscano explained that teachers are professionals and should know not to give special gifts to only a few students separate from the rest of their class. (C.R., Item No. 9 at 16, 26.) Employer sent to Claimant a Notice of Dismissal Charges and Right to Hearing, in which Employer charged Claimant with violating Employer's policies, specifically Employer policy 317 and Employer policy 319.[4] (*Id.* at 20; Employer's Ex. at E35-E38.)

---

[4] Employer's Conduct/Disciplinary Procedures policy (Employer Policy 317) requires employees to conduct themselves in an appropriate manner and to comply with all of Employer's policies, administrative regulations, rules, and procedures. (C.R., Item No. 9, Employer's Ex. at E40-E41.) Employer Policy 317 sets forth the following:

> *All administrative, professional and classified employees are expected to conduct themselves in a manner consistent with appropriate and orderly behavior.* Effective operation of district schools requires the cooperation of all employees working together and complying with a system of Board policies, administrative regulations, rules and procedures, applied fairly and consistently.
>
> . . . .
>
> All district employees shall comply with Board policies, administrative regulations, rules and procedures; attempt to maintain order; perform assigned job functions; and carry out directives issued by supervisors.
>
> When engaged in assigned duties, district employees shall not participate in activities that include but are not limited to the following:
>
> . . . .
>
> 8. Violation of Board policies, administrative regulations, rules or procedures.
>
> . . . .
>
> 10. Conduct that may obstruct, disrupt, or interfere with teaching, research, service, operations, administrative or disciplinary functions of the district, or any activity sponsored or approved by the Board.

Claimant testified that Students 1 and 2 were students in her fifth-grade classroom. (C.R., Item No. 9 at 24.) Students 1 and 2 had been longtime friends with her son and had been to her house to visit with her son. (*Id.*) Claimant initiated text messaging with Students 1 and 2. (*Id.* at 24-25.) Claimant disagreed that she had sent music with explicit lyrics to Students 1 and 2. (*Id.* at 25.) Rather, she testified that she had sent music that her son liked and thought Students 1 and 2 would enjoy the music, too. (*Id.*) Claimant admitted that she texted Student 2, asking "if he would be up later tonight," and she gave Student 2 her opinion of another female student. (*Id.* at 25-26.) Claimant alleged that she had provided her opinion as she was trying to look out for Student 2 like she would with her own son. (*Id.*) Claimant texted Student 2 asking if she could come over to his house later and if he was up for another movie. (*Id.*) Claimant attempted to explain these messages by suggesting that she was only joking about going to his house and that Student 2 had been to her house to watch movies with her son in the past. (*Id.*) Student 2 never told Claimant that he did not want her texting him or that he blocked her on his device. (*Id.*)

---

(*Id.* (emphasis added).)

Employer's Outside Activities policy (Employer Policy 319) addresses situations where non-school activities directly impact upon an employee's effectiveness. (Employer's Ex. at E42.) Employer Policy 319 sets forth the following:

> [T]he Board has a responsibility to evaluate employees' effectiveness in discharging assigned duties and responsibilities.
>
> . . . .
>
> [W]hen non[-]school activities directly impact upon an employee's effectiveness within the school district, the Board reserves the right to evaluate the effect of such activities on the individual's completion of responsibilities and assignments.

(*Id.*)

5

Claimant admitted that she initiated the text messages with Student 1. (*Id.* at 28.) Claimant testified that Student 1 had never asked her to stop texting him, but Student 1's mother approached Claimant outside of school and requested that she stop sending text messages to her son, after which time Claimant used her own son's electronic device to text Student 1. (*Id.*; Item No. 3 at 4; Employer's Ex. at E24.) Claimant asserts that she never knew that Students 1 and 2 had blocked her on their electronic devices. (C.R., Item No. 9 at 28.)

Claimant testified that she had different combinations of her students come to her classroom to have lunch, watch videos, play games, or do homework. (*Id.* at 26-27.) Claimant suggests that her hosting students in her classroom during lunch is appropriate because other school teachers in the fourth and fifth grade hallway also host students in their classrooms during lunch. (*Id.* at 27.) Claimant gave Students 1 and 2 a candy egg and a $10 iTunes gift card, whereas the other students received cookies. (*Id.*; Employer's Ex. at E24.) Claimant gave different students gifts in the past, including giving students a coat, sweatshirts, or legos. (C.R., Item No. 9 at 27.) At no time did Claimant know about any policy that prohibited teachers from giving students gifts, hosting students in their classroom during lunch time, or texting students. (*Id.*) Additionally, Claimant testified that she did not intend to establish a relationship with either Student 1 or 2 that could lead to sexual activity nor did she intend to "groom" the students. (*Id.* at 28.)

Following the hearing, the Referee affirmed the Service Center's decision, concluding that Employer had met its burden to prove that Claimant was discharged for willful misconduct as a result of her inappropriate contact with Students 1 and 2. (C.R., Item No. 10.) In so doing, the Referee made the following findings of fact:

6

1. The claimant was last employed full time as a fifth-grade elementary school teacher by Athens Area School District from 2004 until her last day of work on April 4, 2018.

2. The claimant's son is a fifth-grade student.

3. At the start of the school year in a faculty meeting, the principal discussed the issue of contacting pupils through social media and that inappropriate contact may result in termination of employment.

4. The employer's conduct/disciplinary procedures policy #317 requires employees to conduct themselves in an appropriate manner and to comply with all policies, administrative regulations, rules and procedures.

5. The employer's outside activities policy #319 addresses situations where non-school activities directly impact upon an employee's effectiveness.

6. In April 2018, the employer became aware of allegations that the claimant may have had inappropriate interactions with two of her fifth-grade students.

7. The employer placed the claimant on administrative leave and conducted an investigation into the allegations by interviewing the claimant, students and parents.

8. When questioned by the employer, the claimant admitted that she had initiated contact with two male fifth-grade students by texting the students after school hours.

9. In the text messages with [Student 2], the claimant asked [Student 2] personal information, discussed another student's personal life, asked the questions such as "Can I come to your house?" "Have you any plans for tomorrow?", "Are you up for another movie?".

7

10. In text messages with [Student 1], the claimant asked if it was okay if she texted him and he replied that it was weird but okay.

11. When [Student 1's] mother found out that the claimant was texting her son, she asked the claimant to stop.

12. The claimant continued to send text messages to [Student 1] using her son's device.

13. None of the claimant's text messages to [Students 1 or 2] discussed school activities or educational topics.

14. At Eastertime, the claimant gave chocolate eggs filled with candy and a $10 iTunes gift card to [Students 1 and 2] while her other students received cookies in the classroom.

15. At times, the claimant had various male students, including her son, [Student 1, and Student 2], in her classroom during lunchtime to eat lunch, watch YouTube videos and play games.

16. At the conclusion of its investigation, on May 29, 2018, the employer suspended the claimant without pay and recommended that the Board of Directors dismiss[] the claimant from employment.

17. The employer discharged the claimant for inappropriate interactions with two male fifth-grade students and violating policies #317 and #319.

(*Id.* at 1-2.) The Referee offered the following reasoning for her determination:

In this case, the employer discharged the claimant for inappropriate interactions with two male fifth-grade students and violating policies #317 and #319. The Referee notes that both policy #317 and #319 use broad terminology and do not specifically prohibit teachers from

8

texting students, eating lunch with students in their classroom, or buying gifts or treats for students. However, the Pennsylvania Courts have consistently held that an employer need not have an established rule where the behavioral standard is obvious and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result. If the conduct clearly evinces a breach of duty and obligation which is inimical to the employer's best interest, such acts on the part of the employee may constitute willful misconduct.

Here, the employer provided testimony and documentary evidence to show that the claimant initiated inappropriate contact with two male fifth-grade students by texting the students after school hours. The evidence in the record shows text messages of a personal nature, discussing the personal life of another student, and topics not within a normal teacher/student relationship. The claimant did not deny the allegations made by the employer. The claimant admitted to initiating contact with the two male fifth-grade students, sending multiple personal text messages, continuing to text the one student after his parent asked the claimant to stop texting her son, having the students eat lunch with her in her classroom, and to giving Easter candy and $10 iTunes gift cards to the two students. The claimant's actions were a disregard of the standards of behavior of a professional educator and rose to the level of willful misconduct in connection with her employment. The employer has met its burden to show that the claimant was discharged for willful misconduct in connection with her employment. Now the burden shifts to the claimant [to] show good cause for her actions. The claimant indicated that [Students 1 and 2] were on the same basketball team as her son and that she initiated personal contact with them to see how they were doing. The claimant asserts that she was just kidding when she asked [Student 2] if she could come to his house. The claimant did not explain why she gave [Students 1 and 2] special Easter gifts while she gave cookies to the rest of her class. The claimant has not established good cause for

9

her actions. Therefore, benefits are denied under the provisions of Section 402(e) of the Law.

(*Id.* at 2-3.)

Claimant appealed to the Board. (C.R., Item No. 11.) The Board affirmed the Referee and adopted and incorporated the Referee's findings of fact and conclusions of law. (C.R., Item No. 16 at 1.) The Board noted:

Although the claimant testified that she was not aware of the employer's policies, the claimant knew, or should have known, that her inappropriate contact with fifth-grade students could result in her termination. While the claimant testified that she was being kind and that her son was friends with the two students, the Board does not find that she has shown good cause for her conduct.

(*Id.*)

On appeal to this Court,[5] Claimant argues that the Board erred in concluding that her conduct rose to the level of willful misconduct. We disagree. Under Section 402(e) of the Law, any employee who is discharged or temporarily suspended for willful misconduct is ineligible for unemployment compensation benefits. It is well-established that the question of "[w]hether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). An employer bears the burden to prove that it discharged an employee for willful misconduct. *Adams v. Unemployment Comp. Bd. of Review*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). Even though Section 402(e) of the Law does not define willful misconduct, this Court has repeatedly held that willful misconduct

_____

[5] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

10

is defined as: "(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Review*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017) (quoting *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014)); *see also Palladino v. Unemployment Comp. Bd. of Review*, 81 A.3d 1096, 1100 n.4 (Pa. Cmwlth. 2013), *appeal denied*, 95 A.3d 278 (Pa. 2014).

In cases where an employee is discharged for violation of an employer's policy or rule, "the employer must prove the existence of a work rule, the reasonableness of the rule[,] and the employee's violation of the rule." *Waverly Heights, Ltd.*, 173 A.3d at 1228. The burden only shifts to the employee to prove that she had good cause for not following the employer's policy or rule after the employer has met its burden. *Id.* An employee establishes "good cause" when her actions are "justifiable or reasonable under the circumstances." *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 561 (Pa. Cmwlth. 2012) (quoting *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011, 1015 (Pa. Cmwlth. 2008)).

Here, the existence or reasonableness of Employer policy 317 and Employer policy 319 are not in dispute. Rather, at issue is whether Claimant violated those policies or otherwise disregarded the standards of behavior which Employer had a right to expect. The thrust of Claimant's argument is that the Board erred in concluding that her conduct constituted willful misconduct, because neither the policies nor any other rules of Employer *expressly* prohibited the conduct in which

11

she engaged—*i.e.*, texting with students, eating lunch with students, and giving students gifts. While we agree with Claimant's characterization of Employer's policies and rules, we disagree that her characterization is dispositive of whether her conduct constituted willful misconduct. Both the Referee and Board found that Claimant's conduct was inappropriate. As noted above, Employer policy 317 requires employees "to conduct themselves in a manner consistent with appropriate and orderly behavior." (C.R., Item No. 9, Employer's Ex. at E35-E38.) Claimant's conduct, therefore, constituted a violation of Employer policy 317, such that the Board did not err in concluding that Claimant engaged in willful misconduct.[6]

The burden of proof, therefore, shifted to Claimant to establish that she had "good cause" for her inappropriate, **repeated** contact with Students 1 and 2. Despite Claimant's arguments that her son's longtime friendship with Students 1 and 2 made her actions and personal communications with Students 1 and 2 reasonable under the circumstances, Claimant has not met her burden to prove that she had "good cause" for her actions. Testimony presented at the hearing before the Referee illustrates that Claimant continued to initiate communications with Students 1 and 2 after Student 1's mother requested that she stop texting her son and after Toscano placed her on administrative leave during his investigation into the situation. (C.R., Item No. 9 at 26.) Furthermore, Claimant failed to provide any explanation as to why she singled out Students 1 and 2 to receive gifts of a different nature from her other students. Claimant, therefore, failed to prove that she had "good cause" for her actions.

---

[6] It is less clear that Claimant violated Employer Policy 319, which prohibits an employee's non-school activities from impacting the employee's effectiveness within the school district.

12

Accordingly, we affirm the order of the Board.


_____
P. KEVIN BROBSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Krista I. Satterly,                                          :
                       Petitioner          :
                                                :
            v.                                            :        No. 128 C.D. 2019
                                                :
Unemployment Compensation                    :
Board of Review,                                         :
                      Respondent         :

## **O R D E R**

AND NOW, this 14th day of January, 2020, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

 

                                                                         
P. KEVIN BROBSON, Judge